**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joyce WILLIAMS a/k/a LaTonya**
**Williams, Defendant–**
**Appellant.**

**No. 90–1228.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1990.

Decided Jan. 16, 1992.

Andrew B. Baker, Jr., Asst. U.S. Atty., Office of the U.S. Atty., Dyer, Ind. (argued), for plaintiff-appellee.

David W. Gleicher, Chicago, Ill., Daniel Bella (argued), Merrillville, Ind., for defendant-appellant.

Before BAUER, Chief Judge, COFFEY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The drug conspiracy charges against Joyce Williams arose when postal inspectors in Indianapolis, Indiana, intercepted an express mail package sent from California on August 9, 1989. The package, addressed to LaTonya Williams, at 2402 East 21st Avenue, Gary, Indiana, contained three one-kilogram bricks of cocaine. Joyce Williams resided at that address. After obtaining a search warrant, the postal inspectors replaced the three bricks of cocaine found in the package with imitation bricks of Plaster of Paris. On August 11, 1989, a postal inspector, posing as an express mail delivery man, delivered the package to 2402 East 21st Avenue.

On the day of the delivery, two telephone calls were made from Williams' home to the residence of the sender of the package. Shortly before the package arrived, Joyce Williams called the United States Postal Service in Gary and inquired about the status of an express mail package addressed to LaTonya Williams at 2404 East 21st Avenue. In doing so she provided the post office with the label number of the parcel. When the delivery truck arrived at 2402 East 21st Avenue, the inspector asked Joyce Williams if she was LaTonya Williams and she replied that she was. Joyce then signed the delivery receipt as LaTonya Williams and handed the package to her brother, Thomas, who departed.

Shortly afterwards, when Joyce went out to her car, the officers arrested her. The package was recovered unopened when officers apprehended her brother some blocks away.

Joyce Williams was given *Miranda* warnings by a postal inspector and then taken to the Hammond office of the Drug Enforcement Agency ("DEA") where postal inspectors asked if she would permit them search her home. She said that she would not mind and that she had nothing to hide. Ms. Williams signed a consent to search form after the inspectors advised her that she did not have to consent to the search and that she had a right to consult an attorney before signing the form. Two drug enforcement agents drove Ms. Williams back to her home where she opened the door for the officers. The search of the house revealed a locked box in a closet. When questioned, Ms. Williams said that she did not have a key to the box and that she would not mind if they opened the box. The box contained a sifter with cocaine residue and papers typically used to wrap small quantities of narcotics.

Joyce and Thomas Williams were charged in a three-count indictment with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), and use of a communication facility to commit a felony in violation of 21 U.S.C. § 843(b).[1]

At the conclusion of a hearing in district court on October 27, 1989, Joyce Williams was observed passing something to her brother, who was then in custody. When she handed the object to her brother she told him, "hide it, don't let them see it." When he was returned to the detention area in the courthouse a deputy marshal asked him for the object. He refused to give it to the deputy marshal and instead put it in his mouth and began to chew. Marshals eventually forced Thomas to spit out the object which they found was a partially chewed three-page handwritten note. The note was addressed to "Tom" and stated in part, "... I believe that if you tell them that I didn't know anything about the drugs coming to my house and that I was expecting clothes in the mail." The note also stated, "I didn't know you

---

1. Thomas Williams pleaded guilty to the conspiracy charge pursuant to a plea agreement.

were going to take the plea bargain then. Now, since you are if you tell them what I told you I can beat it...." The note described in detail how Thomas should testify about the package, the locked box and the telephone calls made from Joyce's home phone. At trial, Joyce Williams admitted writing the note, passing it to her brother and telling him not to let anyone see it.

At trial, Joyce Williams presented evidence to refute her alleged involvement in the conspiracy to distribute cocaine. Her brother testified that the locked box found in Joyce's house was his and that Joyce knew nothing about the contents of the box. Other family members sought to explain how the package came to be delivered to Ms. Williams' house. Ms. Williams denied making any phone call inquiry concerning the express mail package.

A jury found Joyce Williams guilty of conspiracy to distribute cocaine, and not guilty of distribution of cocaine and use of a communications facility to commit a felony.

■ Williams first argues that the note retrieved by the marshals from her brother's mouth was the result of an illegal search and seizure. She admits that the marshals may have had an obligation to inspect the object to ascertain that it was not dangerous. But she argues that when the marshals realized it was simply a letter and not contraband or a dangerous instrumentality, they were obligated to return it to her without reading it. We disagree. "Maintaining institutional security and preserving institutional order are essential goals that may require limitation or retraction of the retained rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

■ In an institutional setting letters may pose threats to security; thus the incoming and outgoing mail of prisoners may be subjected to surveillance to minimize their opportunity for developing escape plans. *Gaines v. Lane,* 790 F.2d 1299, 1304 (7th Cir.1986) (citing *Smith v. Shimp,* 562 F.2d 423, 426 (7th Cir.1977)). Here, the justification for the seizure of the letter is even more evident. Unlike a letter sent via the United States mail to a prison inmate, this note was surreptitiously passed by one co-defendant to another who was in custody in a courthouse at the time of a criminal proceeding. The marshals were justified in seizing and reading the note to determine whether Joyce and Thomas were plotting an escape or whether they posed other dangers to security.

■ Perhaps of more fundamental importance, it appears to us that Joyce Williams lacked a reasonable expectation of privacy in the contents of the note. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1979). The record reflects that Ms. Williams intended to give her possessory and ownership interest in the note to her brother. There is no indication in the record that she wanted him to return the note. The marshals searched *Thomas Williams* after he gained possession of the note. Thus, he has standing to argue that his fourth amendment rights were violated. Joyce Williams, however, cannot show that her own fourth amendment rights were violated. *Id.,* 439 U.S. at 133, 99 S.Ct. at 425 ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."), quoting, *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). *See also e.g., United States v. Fuesting,* 845 F.2d 664, 671 (7th Cir.1987); *United States v. Peters,* 791 F.2d 1270, 1280–81 (7th Cir.), *cert. denied,* 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986).

■ Ms. Williams also contends that she did not voluntarily and knowingly consent to the search of her home. This is a question of fact which we consider in light of the circumstances surrounding the search. *United States v. Hardin,* 710 F.2d 1231, 1236 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 286, 78 L.Ed.2d 263 (1983). We give great deference to factual findings of the district court and will affirm those findings unless they are clearly erroneous. *Id.* There is no evidence which suggests that Joyce Williams' consent to the search of

her residence was not voluntary. Although Ms. Williams notes that the officers sought her consent while she was in the DEA office, there is no evidence that her consent was the product of coercion. She told the agents that she would not mind if they searched her home because she had nothing to hide. Before she signed the consent to search form, she was advised that she did not have to consent to the search and that she could consult with an attorney before signing. After receiving this advice, Ms. Williams signed the form and indicated that she did not need an attorney. The district judge did not err in finding that Ms. Williams knowingly and voluntarily consented to the search of her residence.

■ Ms. Williams argues additionally that she did not consent to the search of the locked box found in the closet. The district court denied her motion to suppress the box as evidence on the ground that she lacked standing to object to the introduction of the box because she had claimed it did not belong to her. *See United States v. Rush*, 890 F.2d 45, 48 (7th Cir.1989) (holding that a defendant's denial of ownership of a suitcase "was sufficient to preclude his assertion of any legitimate expectation of privacy [in it]").

Joyce Williams fails to address the finding of a lack of standing, and instead argues that consent to search the house did not extend to the box. We have already established that Williams voluntarily and knowingly consented to a search of her home and "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820, 102 S.Ct. 2157, 2170, 72 L.Ed.2d 572 (1982). When the officers found the locked box they brought it to Ms. Williams and asked for the key. She claimed that she did not have it. She also said that she did not mind if they opened the box. Thus, even if Ms. Williams has standing to challenge admission of the box, the box was properly admitted in evidence because Ms. Williams specifically consented to the search of the box.

■ Ms. Williams also maintains that the district court erred in admitting hearsay testimony concerning the package number that she recited when she called the post office and inquired about the status of the package. We defer to a district court's evidentiary rulings and will not reverse a decision regarding the admissibility of evidence unless there was a "clear abuse of discretion." *United States v. Foster*, 939 F.2d 445, 450 (7th Cir.1991) (quoting *United States v. Carter*, 910 F.2d 1524, 1530 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991)). To begin with, Ms. Williams is a former postal employee. When she called the Gary post office to ask about the express mail package, her former supervisor, Joanne Turner, answered the phone and recognized Ms. Williams voice. Following her usual practice, Ms. Turner wrote down the address and package number on a note-pad next to her phone before ascertaining the status of the package. When preparing her written statement for the postal inspectors in which she described the events surrounding the phone call, Ms. Turner was on vacation and could not remember the exact address or package number provided by Ms. Williams. Ms. Turner prepared her written statement at her home and asked her supervisor to fill in the blanks she had left in the statement by using the information from the note-pad next to Ms. Turner's office telephone. After receiving Ms. Turner's written statement, her supervisor located the address and package number on Ms. Turner's note-pad and recorded it in the blanks on the statement.

The district court admitted Ms. Turner's written statement, containing the package number entered on it by the supervisor, as a recorded recollection pursuant to Federal Rule of Evidence 803(5) for the limited purpose of allowing Ms. Turner to identify the label number provided to her by Joyce Williams. Ms. Williams objected that the package number contained in the report was inadmissible hearsay. At a sidebar,

the court expressed concern that the package numbers contained in the statement of the employee could not be a recordation of the witnesses' past recollection because the numbers were written by the supervisor, not the witness.[2] The government then offered to call the supervisor to testify that the address and package number recorded on the statement were the same as those she had seen and copied from Ms. Turner's pad. The court evidently found that this was unnecessary because it overruled Williams' objection. Ms. Turner then read the label number contained in the statement to the jury.

Where a person perceives an event and reports it to another person who records the statement, both must ordinarily testify to establish that the statement is a past recollection recorded under Rule 803(5). The person who witnessed the event must testify to the accuracy of his oral report to the person who recorded the statement. The recorder must also testify to the accuracy of his transcription. Weinstein's Evidence § 803(5)[01]; Louisell & Mueller Federal Evidence § 445. *See also Swart v. United States*, 394 F.2d 5, 6 (9th Cir.1968). In *Swart*, several witnesses testified that they had observed the license plate of a car leaving the scene of a bank robbery. The witnesses could not remember the license plate at the time of trial. The court allowed police officers to testify that they had interviewed the witnesses at the scene and recorded the witnesses' statements in police reports. The court held that the testimony concerning the license plate was not hearsay because it was a past recollection recorded. *Id.* Here, the government did not call the supervisor as a witness to testify that she accurately recorded the statement of Ms. Turner. Ms. Williams claims that this constituted error.

We disagree. Ms. Turner's recording of the label number on her note-pad would be admissible as a recorded recollection because she wrote that note. The statement prepared by Ms. Turner and filled in by the supervisor was a copy of that note. Rule 1004 permits a party to introduce other evidence of the contents of a writing where the original is lost or destroyed. Moreover, we note that Ms. Williams did not claim that the numbers were recorded inaccurately by the supervisor. Thus, the district court did not abuse its discretion in admitting the statement to refresh Ms. Turner's memory as to what package number was read to her over the phone by Joyce Williams.

■ Even if the district court erred by admitting the statement, the error was unlikely to influence the jury because Ms. Turner recognized Ms. William's voice when Ms. Williams called and because the other evidence of her guilt was strong. Thus, at most, the district court's ruling that the statement was a past recollection recorded of the employee was harmless error and does not require reversal of Williams' conviction. *See Foster*, 939 F.2d at 445. *See also United States v. Ramsey*, 785 F.2d 184, 191–93 (7th Cir.), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986) (holding that although the district court erred in admitting into evidence a statement of past recollection recorded, the error was harmless).

■ Ms. Williams claims that the district court erred in admitting the locked box and its contents as evidence of a conspiracy to possess and deliver cocaine. She argues that these items seized inside the house were not relevant to what took place outside of the house and thus not relevant to the conspiracy charge. *See* FED.R.EVID. 402. Ms. Williams' argument rests on an assumption that the conspiracy occurred entirely "outside" her residence. Ms. Williams argues, quite implausibly, that the evidence of the conspiracy which occurred "outside" the house is legally distinct from evidence found within the house. We are unable to understand how this conspiracy to distribute cocaine must have occurred entirely outside of Ms. Williams' residence.

---

2. The court also noted that Ms. Turner admitted that she never reviewed the statement after it was completed by her supervisor to determine that it accurately stated the label number of the package.

Moreover, the evidence found inside Ms. Williams' residence clearly demonstrated her involvement in a conspiracy to distribute cocaine. The package that contained the bricks of cocaine was addressed to 2402 East 21st Avenue, the same address where the box containing the drug paraphernalia was found. The box contained a sifter with cocaine residue, and papers similar to those used to wrap small quantities of cocaine. The district judge found that "the evidence may be relevant and material under [Rule] 404(b) as proof of motive, opportunity, intent, preparation, plan, knowledge, identity...." *See* FED.R.EVID. 404(b). Under the circumstances, it was not an abuse of discretion to admit the paraphernalia.

■ The final argument we address is Williams' claim that there is insufficient evidence to sustain the jury's verdict. Appellants who raise sufficiency of evidence challenges bear a "'heavy burden.'" *United States v. Scroggins*, 939 F.2d 416, 421 (7th Cir.1991) (quoting *United States v. Valencia*, 907 F.2d 671, 676 (7th Cir.1990)). We view the evidence in the light most favorable to the government and we will affirm the jury verdict if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)). The evidence is clearly sufficient to show that Ms. Williams conspired to distribute cocaine. The cocaine shipment was delivered to Ms. Williams' residence. On the day that the cocaine was delivered she called the post office to inquire about the package and gave postal employees her address, the package number and the spelling of the addressee as it appeared on the parcel.[3] When the postal inspector arrived with the package, Williams told him that she was the addressee and signed "LaTonya" on the receipt. Moreover, in the partially chewed note, Joyce Williams instructed her brother to testify to enable her to "beat it" [the drug charges]. There was

sufficient evidence to support the jury's verdict that Ms. Williams was guilty of conspiring to distribute cocaine.

Ms. Williams' other arguments do not merit discussion, and for the foregoing reasons, we AFFIRM Joyce Williams conviction for conspiracy to distribute cocaine.

---

**3.** The package was addressed to LaTonya Williams, spelled with an "o." Joyce Williams' sister spelled her name "LaTanya" yet when Joyce asked about the package, she spelled "La-Tonya." We do not find this discrepancy significant.