## State of Vermont v. Steven Marcy

[680 A.2d 76]

No. 94-173

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 22, 1996

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *Anna Saxman*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Johnson, J.** Defendant appeals his conviction by jury for simple assault. He argues that the trial court erred by (1) admitting the assault victim's tape-recorded statement as past recollection recorded, pursuant to V.R.E. 803(5), and (2) denying defendant's motion for judgment of acquittal pursuant to V.R.Cr.P. 29, because the sole evidence supporting defendant's conviction is past recollection recorded, which defendant argues does not meet the standards for reliability set out by this Court in *State v. Robar*, 157 Vt. 387, 395, 601 A.2d 1376, 1380 (1991). We affirm the trial court, holding that the tape-recorded statement of the victim was properly admitted as past

recollection recorded and that the victim's statement was sufficiently reliable to support the conviction.

## I.

The victim was defendant's wife. Following the assault on December 28, 1992, the victim obtained a restraining order against defendant. On December 29, 1992, the day after the assault, a police officer went to the victim's home in response to her complaint against defendant. The victim told the officer that she had been assaulted by defendant, who had "pounded her head against a door" and "choked her to the point where she nearly blacked out," and that he had damaged several guns. At the time of the interview, the officer observed scratches on the victim's face, which she claimed were the result of the physical confrontation with defendant. The officer also interviewed two other residents of the house. One of those residents stated that he had seen defendant and his wife enter their bedroom, that he had heard shouting, including the victim saying, "Don't do it, please don't do this," and that he had heard noises coming from the bedroom, including a banging against the door. The other resident stated only that he had heard an argument inside the house.

After speaking with these three people, the police officer tape-recorded an interview with the victim, which the officer testified was consistent with what the victim had told him earlier. The officer also testified that the victim appeared to be alert and to understand what she was doing while he was tape-recording the interview, and that she showed no indication that she was having trouble remembering the events of the previous night.

At trial, the victim testified that she did not remember the assault. She maintained that she only could remember visiting a psychiatrist's office with defendant, who left the office without her, returning home afterward, and following defendant into the bedroom to find out what had upset him. She vaguely recalled something about guns being broken, but could not remember the details. She testified that she remembered getting a restraining order on December 28, but she did not remember how she got to the police station. She also remembered that a trooper had come to her home, but she did not remember calling the police, and she did not remember being choked by defendant.

The State then offered the victim's tape-recorded statement pursuant to V.R.E. 803(5), as past recollection recorded. The State called several witnesses (out of the presence of the jury), including the

victim, the police officer who took the statement, and a victim advocate with whom the victim had spoken, to lay a foundation for the admission of the statement. The court found that the statement satisfied the requirements of Rule 803(5).

## II.

We first consider whether the trial court properly admitted the victim's tape-recorded statement, pursuant to V.R.E. 803(5), as past recollection recorded.[1] Rule 803(5), which is identical to its counterpart in the Federal Rules of Evidence, establishes an exception to the hearsay rule for a previously recorded recollection of an event, when the witness has no present recollection of the event. *State v. Lander*, 155 Vt. 645, 645, 582 A.2d 128, 128 (1990) (mem.). We have previously held that documents admitted pursuant to V.R.E. 803(5) must meet three requirements:

> "(1) The document must pertain to matters about which the declarant once had knowledge; (2) The declarant must now have an insufficient recollection as to such matters; (3) The document must be shown to have been made by the declarant or, if made by one other than the declarant, to have been examined by the declarant and shown to accurately reflect the declarant's knowledge when the matters were fresh in his memory."

*State v. Paquette*, 146 Vt. 1, 3, 497 A.2d 358, 360 (1985) (quoting *People v. Kubasiak*, 296 N.W.2d 298, 302 (Mich. Ct. App. 1980)).

Based on the victim's testimony and the circumstances under which the statement was given, the trial court determined that the first two requirements were easily met. As the victim of the assault, the witness once had knowledge of it, and her tape-recorded state-

---

[1] V.R.E. 803(5) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (5) *Recorded Recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

ment relates that knowledge in detail. Moreover, the court found that it was "clear and without question[] that the declarant now has insufficient recollection about any matters contained in that tape or . . . concern[ing] what did or did not happen to her on [the date of the assault]." As the trial court's findings are supported by the evidence, they are not clearly erroneous and will not be disturbed on appeal. See *State v. Zaccaro*, 154 Vt. 83, 86, 574 A.2d 1256, 1258 (1990) (noting that trial court's findings of fact will not be disturbed "unless they are unsupported by the evidence or clearly erroneous"); see also *Paquette*, 146 Vt. at 4, 497 A.2d at 360 (requirements one and two met under circumstances similar to instant case).

■ The more difficult question is whether the tape-recorded statement meets the third requirement. To meet this requirement, the statement must pass two separate tests. First, the statement must be shown to have been made by the witness, or if made by another, to have been adopted by the witness. V.R.E. 803(5); see *Paquette*, 146 Vt. at 4, 497 A.2d at 361 (noting that facts "sufficiently show that the statement was *adopted* by the witness") (emphasis added). In this case, the testimony of the police officer who tape-recorded the statement is sufficient to establish that the statement was made by the witness.

■ Second, the statement must be shown to accurately reflect the witness's knowledge when the matter was fresh in her memory. *Paquette*, 146 Vt. at 3, 497 A.2d at 360. Defendant, arguing that the statement should not have been admitted, emphasizes that the statement was not sworn, and that the witness never affirmed the truth or accuracy of the statement when it was made. Defendant misconstrues the requirements of Rule 803(5). Nothing in the language of the rule indicates that, to be admissible, the prior statement must be sworn, or that the *witness* must affirm the accuracy of the prior statement.

A number of courts have ruled statements inadmissible as past recollection recorded because the statements were not sworn, signed by the witness, or otherwise affirmed by the witness as accurate. Closer examination of those cases reveals, however, that the statements involved were not prepared by the witness, but by another person, usually a law enforcement agent. See, e.g., *United States v. Schoenborn*, 4 F.3d 1424, 1427 (7th Cir. 1993) (noting that witness "did not adopt . . . as his own" report prepared by FBI agent of interview with witness); *People v. Hoffman*, 518 N.W.2d 817, 825 (Mich. Ct. App.

1994) (holding that denying admission of police officer's typewritten notes of witness's statement was proper where witness never adopted statements as true and accurate); *People v. Kubasiak*, 296 N.W.2d at 302 (holding that police report of witness's statement was inadmissible because witness had not adopted report as accurate when matter was fresh in his memory). Understandably, where a prior statement was prepared by a person other than the witness, courts have relied on or even required evidence that the witness had sworn or otherwise affirmed the accuracy of the prepared statement, to satisfy the requirement that the witness adopted the statement.

Here, there is no dispute that the witness herself gave the tape-recorded statement. The question before us is whether the State presented sufficient evidence to show that the tape-recorded statement accurately reflected the witness's knowledge of the assault. The trial court, in finding the statement admissible, relied upon the following evidence of its accuracy: the statement was given to a police officer within a day of the assault; the tape-recorded statement was made shortly after and was consistent with a prior interview with the police officer; the statement revealed details of the assault; the statement described the events chronologically; the witness spoke coherently, logically, and relatively directly, responding appropriately to questions from the officer; the witness did not appear sleepy or groggy to the officer, despite her later testimony that she was taking prescription drugs at the time the statement was given; and the police officer's interviews with the other residents of the house provided some corroboration. The trial court also emphasized that the witness never recanted the statement, or indicated that the statement was inaccurate or given involuntarily, but rather testified that if she had talked to a police officer she would have tried to be truthful. Specifically, the witness testified that she would not have "intentionally" or "deliberately" lied to the officer.

Defendant points to two elements of the witness's testimony as throwing doubt on the accuracy of the statement. The witness testified that she was using prescription drugs at the time the statement was given, which could have affected her thinking. Also, when asked if she could think of any reason why she might have wanted to tell the police officer something that she did not believe to be true at the time, she replied, "Maybe anger." The trial court judge, who observed the testimony firsthand, found persuasive the police officer's testimony that the witness spoke clearly and did not appear sleepy or groggy at the time of the statement. The judge also found

that the witness had not recanted the statement or "given evidence saying that what she said previously is incorrect." Again, the court's findings on these two issues are not clearly erroneous, and will not be disturbed by this Court. See *Zaccaro*, 154 Vt. at 86, 574 A.2d at 1258.

We agree with the court that, taken together, the evidence presented by the State is sufficient to show that the tape-recorded statement of the witness correctly reflects her knowledge of the assault at the time it was made. In so doing, we adopt the reasoning of the Sixth Circuit, which in interpreting the identical federal rule regarding past recollection recorded recently stated:

> Rule 803(5) does not specify any particular method of establishing the knowledge of the declarant nor the accuracy of the statement. It is not a *sine qua non* of admissibility that the witness actually vouch for the accuracy of the written memorandum. Admissibility is, instead, to be determined on a case-by-case basis upon a consideration . . . of factors indicating trustworthiness, or the lack thereof.

*United States v. Porter*, 986 F.2d 1014, 1017 (6th Cir. 1993). In *Porter*, the defendant was convicted on several charges involving drugs and explosives. Part of the evidence supporting his convictions was a detailed written statement given by his girlfriend to the FBI. Portions of the statement were read to the jury after the girlfriend testified that she did not remember much about what she had said in the statement, because "she was confused and on drugs at the time the statement was made." *Id.* at 1016. She did not testify that the statement was accurate. The trial court found "sufficient indicia of trustworthiness," including the details contained in the statement, its internal consistency, and its consistency with other evidence. *Id.* at 1017.[2]

Here, although the victim did not sign the statement, that factor is much less important because the statement is a tape-recording in the victim's own voice. The other evidence relied on by the trial court is sufficient to establish the accuracy of the statement. The tape-

---

[2]The facts in *Porter* are not directly analogous to this case, because the witness in *Porter* had signed the statement under penalty of perjury at the time it was made, and had also initialed the statement several times where she had changed the wording. As in many past recollection recorded cases, the statement in *Porter* was prepared by a law enforcement agent, rather than by the witness herself. The reasoning in *Porter* is, however, still applicable. That the witness signed the statement when it was made was not determinative, but was one factor supporting the accuracy of the statement.

recorded statement of the victim was properly admitted as past recollection recorded and could be relied upon by the jury.

We do not believe that our holding is inconsistent with our memorandum decision in *State v. Lander*, 155 Vt. at 645, 582 A.2d at 128, where we held that a witness's prior statement was not admissible as past recollection recorded. We noted that the witness had not "adopt[ed] his prior statement as his own or aver[red] that the statement accurately reflected his knowledge at the time of its making."[3] *Id. Lander*, however, is a brief memorandum decision which does not provide the relevant facts of the case. The decision does not indicate, for example, whether the statement was prepared by the witness or by a third party, but merely cites to *Kubasiak*, 296 N.W.2d at 302, where the court refused to admit a police officer's report of a witness's prior statement where the witness had not adopted that report as true.

We are not persuaded that our memorandum decision in *Lander* should be interpreted as altering the plain language of V.R.E. 803(5) to add a requirement that the *witness* must testify that the statement accurately reflects the witness's knowledge at the time the statement was made. Had the drafters intended this result, they could easily have accomplished it by changing the language of the rule. Instead, the rule is phrased in the passive voice, requiring only that the memorandum or record be "*shown* to have been made or adopted by the witness." V.R.E. 803(5) (emphasis added). We conclude that the language of the rule contemplates a more flexible case-by-case determination of the admissibility of a statement as past recollection recorded, that evaluates the trustworthiness of the prior statement instead of focusing on hypertechnical evidentiary requirements. See *United States v. Williams*, 571 F.2d 344, 350 (6th Cir. 1978) ("touchstone for admission of evidence as an exception to the hearsay rule has been the existence of circumstances which attest to its trustworthiness"); see also *State v. Discher*, 597 A.2d 1336, 1341 (Me. 1991) (past recollection recorded exception does not spell out method for establishing initial knowledge or contemporaneity and accuracy of record, but leaves determination to circumstances of particular case).

---

[3] The dissent emphasizes this statement as announcing a foundational requirement for admission under Rule 803(5). We note, however, that the statement was based on "a review of the record," *State v. Lander*, 155 Vt. 645, 645, 582 A.2d 128, 128 (1990)(mem.), and may more fairly be read as a recounting of the facts of the case.

## III.

We next consider whether the trial court erred in denying defendant's motion for judgment of acquittal pursuant to V.R.Cr.P. 29. Defendant argues that, even if properly admitted, the victim's tape-recorded statement was insufficient evidence to sustain a conviction. "The standard for sufficiency of the evidence is that, 'taken in the light most favorable to the State and excluding modifying evidence, there [must be] sufficient evidence to fairly and reasonably support a finding of [guilt] beyond a reasonable doubt.'" *State v. Robar,* 157 Vt. at 391, 601 A.2d at 1378 (quoting *State v. Papazoni,* 157 Vt. 337, 338, 596 A.2d 1276, 1276 (1991)) (alterations in original).

We have previously considered whether a prior statement admitted as past recollection recorded may be sufficient to support a conviction where the prior statement is the sole evidence of guilt. In *Robar,* we declined to adopt the rule of *United States v. Orrico,* 599 F.2d 113, 118-19 (6th Cir. 1979), in which the Sixth Circuit held that where past recollection recorded or prior inconsistent statements are the sole evidence for a central element of a case, that evidence is insufficient to support a finding of guilt beyond a reasonable doubt. *Robar,* 157 Vt. at 392-93, 601 A.2d at 1378-79. Instead, noting our concern that the result not be "overly rigid in circumstances where the prior statement is particularly reliable," *id.* at 395, 601 A.2d at 1380, we adopted the less rigid standard set out by the New Jersey Supreme Court in *State v. Mancine,* 590 A.2d 1107 (N.J. 1991). *Robar,* 157 Vt. at 395, 601 A.2d at 1380. In *Mancine,* the New Jersey court held that an uncorroborated, prior inconsistent statement could stand as sufficient proof of the elements of a crime if the "statement was made under circumstances supporting its reliability and the defendant has an opportunity to cross-examine the declarant." *Mancine,* 590 A.2d at 1119.

Applying our decision in *Robar* to the facts of this case is somewhat difficult, because in *Robar* we gave only a brief explanation of why the prior statement at issue did not meet the test for reliability set out in *Mancine. Robar,* 157 Vt. at 395-96, 601 A.2d at 1380-81. In support of our holding in *Robar* that a witness's prior inquest testimony, admitted at trial as past recollection recorded, was not sufficiently reliable to sustain the defendant's conviction, we pointed out that the inquest testimony was given six months after the event, that the testimony was apparently given as part of a deal involving possible criminal charges against the witness, and that the witness may have mistakenly believed that the defendant had already confessed. *Id.* at 395-96, 601 A.2d at 1380.

We agree with the trial court that the facts of this case bring it closer to *Mancine*, where the court allowed the conviction to stand, than to *Robar.* The tape-recorded statement of the victim in this case raises none of the reliability concerns present in *Robar*. The victim gave the statement the day after the assault. There is no suggestion that the victim was subject to coercive tactics when she gave her statement. See *id.* at 395, 601 A.2d at 1380. The *Mancine* court found the prior statement to be reliable because it was given two days after the relevant events and was a more complete version of a statement made earlier, and because the statement had a "'casual,' easy 'flow.'" *Mancine*, 590 A.2d at 1118. Here, the victim's statement, given the day after the assault, was consistent with an earlier statement given to the same police officer. The trial court found that the statement "did not appear to be forced, coerced or strained," but rather had "a flow" and sounded "fairly comfortable."

The reliability of the victim's tape-recorded statement is further bolstered by the presence of some corroborating evidence. The police officer testified that he saw scratches on the victim at the time she gave her statement. Defendant himself told the police officer that he "had been involved in a physical confrontation with his wife" on the night in question (although he claimed that he had acted in self-defense). The victim's testimony also placed defendant at the scene of the assault. See *id.* at 1117 (holding that "prior inconsistent statement for which substantial evidence exists corroborating any of its specific elements and enhancing its seeming reliability is corroborated in its entirety and may be used for all purposes").

*Robar* requires not only that the prior statement meet certain standards of reliability, but also that the defendant have an opportunity to cross-examine the witness. *Robar*, 157 Vt. at 395, 601 A.2d at 1380. We noted in *Robar* that the cross-examination of the witness was "perfunctory" because the witness had testified that she had no memory of the inquest and the events surrounding it. *Id.* at 396, 601 A.2d at 1380-81. In this case, the victim similarly claimed no recollection of the assault or giving the statement. Nevertheless, cross-examination was far from "perfunctory."

█ Where a prior statement has been admitted as past recollection recorded, cross-examination as to the substance of the prior statement will not be possible, because the statement will be admitted only if the witness claims to have no recollection of the relevant events. Unless we were to say that such a statement is not sufficient to support a criminal conviction, a position we rejected in *Robar, id.* at

395, 601 A.2d at 1380, the cross-examination is limited to the reliability of the prior statement. Here, defense counsel questioned the victim regarding her lack of recollection, and brought out the victim's use of prescription drugs at the time the statement was given. Defense counsel also questioned the police officer regarding his observations of the victim and the circumstances under which he took the victim's statement. Defendant thus had ample opportunity for cross-examination as to the reliability of the victim's statement.

The tape-recorded statement of the victim, properly admitted as past recollection recorded,[4] was sufficient evidence to support defendant's conviction for simple assault, because it was made under circumstances supporting its reliability and defendant had an opportunity to cross-examine the victim.

*Affirmed.*

**Allen, C.J.,** concurring. I agree that the trial court properly admitted the tape recording of the victim's statement and did not err in denying defendant's motion for judgment of acquittal; I therefore join the majority in affirming. I write separately, however, to point out that the disagreement between the majority and the dissent on the foundational requirements of Rule 803(5) need not be resolved to decide this appeal. Even under the dissent's more restrictive interpretation of the rule, the foundational requirements were satisfied in this case.

To ensure that a statement accurately reflects the witness's knowledge, that witness "must either testify (1) that he recalls having made an accurate memorandum or (2) that though he now does not recollect his state of mind when making the record, he would not have made it

---

[4] Although the issue was not raised on appeal, the dissent argues that permitting the jury to hear the tape in the victim's own voice also violated V.R.E. 803(5), which states that a memorandum or record, admitted as past recollection recorded, "may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party." This restriction, which has been criticized by some commentators, see 3 J. Wigmore, Evidence § 754 (Chadbourn rev. 1970), reflects a concern that "undue weight might be given to the document itself." Reporter's Notes, V.R.E. 803. If the written memorandum or record was admitted into evidence, it would be available to the jury during deliberations.

While it is true that a writing may tend to take on greater significance with the jury simply because the statement is in writing and in the hands of the jury, the playing of a tape recording does not raise the same problem. It seems ludicrous to suggest that in this case the jury should hear another person read a transcript of the tape, rather than hear the victim actually making the statement. Why should the jury not judge the credibility of the prior statement by hearing it from the victim's mouth?

unless it were correct." 4 Weinstein's Evidence ¶ 803(5)[01], at 803-180 to -181 (1995). Under the second approach, the witness can testify that he would not have written or signed a memorandum unless he had been convinced it was correct. *Id.* at 803-181; 2 McCormick on Evidence § 283, at 259 (4th ed. 1992).

Although this case involved a tape recording rather than a signed statement, the witness's testimony is analogous to the foundational predicate for a written memorandum. See, e.g., *Dennis v. Scarborough*, 360 So. 2d 278, 279 (Ala. 1978) (the witness testified that "he must have known the recording's veracity (though not whether the statement itself was accurate) because he otherwise would not have written them down."); *Walker v. Larson*, 169 N.W.2d 737, 742 (Minn. 1969) (witness "testified that he had never signed any paper which did not contain true facts within his own knowledge."). Referring to statements in a transcript of the tape recording, the state's attorney asked the victim, "[W]ould you have said them if they were not true?" The victim replied, "I don't believe I would have." The state's attorney then asked the victim, "Is there a single thing in those two pages [of the transcript] that you think you would have deliberately said to the police officer if they were not true?" She replied, "No." In its Rule 803(5) analysis, the trial court relied upon this testimony by the witness, saying: "She[] further testified that . . . if she had talked to a police officer, and that is now established, about this incident, she would have endeavored to be truthful. . . . She has not given evidence saying that what she said previously is incorrect." *

In *United States v. Patterson*, 678 F.2d 774 (9th Cir. 1982), the court concluded that the foundational requirement was satisfied under circumstances similar to this case. In *Patterson*, the government sought to introduce the defendant's grand jury testimony as past recollection recorded. The court concluded that the witness's testimony that "he did not think he had lied to the grand jury" was sufficient to establish that the grand jury testimony accurately reflected the witness's knowledge. *Id.* at 779. In sum, the tape

---

* Although the trial court may have determined the admissibility of the tape recording under the disputed interpretation of Rule 803(5), we can affirm its admissibility determination on any legal ground which would justify the result. *Richards v. Union High Sch. Dist. No. 32*, 137 Vt. 132, 134, 400 A.2d 987, 989 (1979) ("Error will not result in reversal if the record before us discloses any legal ground which would justify the result, even though the ground may not have been raised below and may not be briefed.").

recording of the victim's statements was properly admitted under either the majority or dissent's interpretation of the foundational requirements of Rule 803(5).

I have been authorized to state that Justice Gibson joins in this concurrence.

**Dooley, J.,** dissenting. The majority opinion represents an unprecedented weakening of the foundational requirements of the hearsay exception for past recollection recorded, V.R.E. 803(5), and an abandonment of the restrictions on the use of such evidence as the sole basis to convict a criminal defendant. The effect is that hearsay evidence, the reliability of which cannot be challenged by normal means, acquires such weight that defendant is stripped of the ability to mount an effective defense. Although I am sympathetic to the majority's goals in this domestic violence case, I cannot agree to the distortion of neutral and essential principles of evidence law and fair play that reaching those goals necessitates. Accordingly, I dissent.

At the outset, I believe that we should be more forthcoming about what is really motivating the decision. This case involves an allegation of spousal abuse in which, as in many such cases, the abused spouse is the only witness to the assault. And too often, after filing a complaint with the police, the abused spouse recants or seeks not to press charges against the abusive spouse. See C. Klein & L. Orloff, *Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law,* 21 Hofstra L. Rev. 801, 1187-88 (1993). The reality is that both the trial judge and the majority believe that this is a case of recantation by convenient memory lapse. That is, they are skeptical of the victim's assertion that she remembers neither the assault nor the statement. What the opinion really says is that spousal abusers should not be able to avoid criminal responsibility by such a ploy.

I share the skepticism about the victim's memory failure, but am unwilling to join result-oriented decision-making that eliminates important safeguards on the truth-finding function of trials. In this instance, evidentiary doctrine created to prevent those who feign amnesia from subverting the criminal justice process is equally applicable when the memory lapse is real.[1] The result is to open up

---

[1] By comparison, Rule 801(d)(1)(A), admitting prior inconsistent statements as "not hearsay," can be used when the court finds a witness is feigning a memory loss. See 2 McCormick on Evidence § 251, at 121 (4th ed. 1992). That rule has an additional

the realm of "trial-by-statement" where it is impossible to test the accuracy of the statement or resolve evidentiary conflicts in any reliable way.

I am also troubled that there is an internal inconsistency in the majority's approach to the problem that confronts us. The hearsay rule that allows for the admission of the critical statement is applicable if the declarant "now has insufficient recollection to enable him to testify fully and accurately." V.R.E. 803(5). What the majority is really holding is that because this essential element of the hearsay exception is *not* met, we should broaden the exception to let in *more* hearsay than we would otherwise allow. I fear that we are standing normal evidence analysis on its head to reach the desired result.

## I

On the hearsay point, what is in issue is contained in *State v. Lander*, 155 Vt. 645, 582 A.2d 128 (1990) (mem.), where we reversed a criminal conviction because critical evidence was erroneously admitted under V.R.E. 803(5):

> When a witness has no present recollection of a prior event, a previously recorded recollection of the event is admissible under V.R.E. 803(5) despite the proscription against the use of hearsay, V.R.E. 802, provided that the proponent lays the necessary foundation. . . . Defendant raised a timely objection to the use of the witness's statement based on the inadequacy of the foundation. *A review of the record indicates that the witness did not adopt his prior statement as his own or aver that the statement accurately reflected his knowledge at the time of its making. . . . Therefore, the statement lacked a foundation sufficient to justify its admission into evidence.*

*Id.* at 645, 582 A.2d at 128 (citations omitted; emphasis supplied). There is no dispute that the foundation required in *Lander* is missing here. The majority has two answers to this obvious obstacle.[2]

The first is to distinguish *Lander* on the basis that the statements involved were prepared by another person rather than by the witness.

---

safeguard that the prior statement must be "given under oath subject to the penalty of perjury." V.R.E. 801(d)(1)(A).

[2] A footnote suggests a third, that the *Lander* requirements were descriptions of history not law. In the paragraph quoted above, the next to the last statement can and should be taken as a description of what is in the record. The last sentence, commenced with "Therefore," clearly states that the consequence of this history is that the

The majority cites four cases for the significance of this distinction. None state that this distinction is critical so that the evidence would have been admissible if the statement had been prepared by the witness. In *United States v. Schoenborn*, 4 F.3d 1424, 1428 (7th Cir. 1993), for example, the court quoted from its earlier opinion in *United States v. Williams*, 951 F.2d 853, 858 (7th Cir. 1992), that in a third-party-transcription case, the evidentiary foundation must include both testimony to the accuracy of the transcription and testimony by the person whose past recollection is in issue "to the accuracy of his oral report to the person who recorded the statement." What *Schoenborn* holds is that third-party-transcription cases impose an additional foundational requirement beyond that imposed in *Lander*; it clearly does *not* hold that the *Lander* requirements are inapplicable in such cases.

The majority's new distinction is curious because it does not even apply to the facts of this case. V.R.E. 803(5) plainly states that a "*memorandum or record . . .* shown to have been made or adopted by the witness" may be admissible as past recollection recorded. (Emphasis added.) Here, the tape recording was made by the *officer*, not the witness. The police were in possession of the tape until trial. Indeed, we have a copy because the original is lost. Moreover, the officer testified that part of the tape was erased during transcription. The tape recording has pauses and jumps, as the machine was stopped and started during the interview.[3]

The use of the majority's new distinction to distinguish *Lander* is also curious, since there is no indication in that published entry order decision that it is a third-party-transcription case. This the first time I have ever observed that we have guessed at the facts of an appellate precedent in order to distinguish it on grounds never mentioned in the precedent.

In any event, no commentator supports the distinction made by the majority. McCormick comes the closest to the majority by acknowledging that the foundational requirements in issue may be more easily satisfied where there is no third-party-transcription, but is clear that the witness must in some way acknowledge the accuracy of the prior statement. See 2 McCormick on Evidence § 283, at 259-60

---

"statement lacked a foundation sufficient to justify its admission." It can be interpreted only as a statement of law, inconsistent with the majority's position here.

[3] I am not suggesting that the tape recording was doctored. I am suggesting that the same issues of accuracy of transcription exist for a tape recording as for written statement which is reduced to writing by a third party.

(4th ed. 1992). Weinstein states that in any case the witness whose statement is admitted must testify that he now recalls that it was accurate or that he would not have made it if it were not correct. 4 Weinstein's Evidence ¶ 803(5)[01], at 803-180 to -181 (1995).

Nothing in the language of the rule supports the distinction. The rule requires the proponent of admission to show that the statement reflects the witnesses' *"knowledge* correctly." V.R.E. 803(5) (emphasis supplied). If the drafters intended the new majority result, they would have used "statement" not "knowledge."

In short, the majority has created a distinction without a difference in order to distinguish a precedent of this Court which is dead against it. There is no support for the proposition that the difference can eliminate the foundation requirement of *Lander* that the witness "aver that the statement accurately reflected his knowledge at the time of its making." *Lander*, 155 Vt. at 645, 582 A.2d at 128.

The second answer is to ignore the holding of *Lander* as if the inconvenient words within it have somehow disappeared. The majority's view is that *Lander* cannot mean what it says because the plain language of Rule 803(5) does not include the *Lander* requirement. Part of the reason for the brevity of *Lander*, I am sure, is that it restated the widely-accepted requirements of the rule. See 4 Weinstein's Evidence § 803(5)[01], at 803-180 to -181. The rule was drafted to be a codification of the common law hearsay exception, which included the *Lander* requirements. See *id.* at 803-172 (rule is codification of law that was long-favored in the federal courts); 3 Wigmore on Evidence § 747(a) (1970) (hearsay exception for past recollection recorded requires that witness be able to assert that record correctly represented his knowledge and recollection at time of making).

We have said often that our overall aim in construing statutes is to implement the intent of the Legislature. See, e.g., *Lemieux v. Tri-State Lotto Comm'n*, 164 Vt. 110, 113, 666 A.2d 1170, 1173 (1995). The same principle applies to construing our rules, but it is our intent that we must follow. Few of our evidence rules have a "plain meaning" when applied to myriad of circumstances that arise in the courtroom. Unlike the Vermont Legislature, we have devices in our rule drafting to explain the intent of the draftspersons. Thus, we have frequently looked to reporter's notes, and other indicia of intent to determine the proper interpretation of rules. See *State v. Bean*, 163 Vt. 457, 463, 658 A.2d 940, 944 (1995). Also in construing a statute or rule, we presume that the common law is not changed except by clear and unambiguous

language. See *Estate of Kelley v. Moguls, Inc.*, 160 Vt. 531, 533, 632 A.2d 360, 362 (1993).

The intent behind Rule 803(5) is clear: to codify the common law rule, which contains the *Lander* foundation requirements. The wording of the rule does not clearly and unambiguously modify the common law requirements. It still requires that the past record reflect the declarant's knowledge "correctly," and here, this requirement has not been met. The majority's attempt to find nuances in the drafting of Rule 803(5), while ignoring the statements of intent, only insures that the outcome will not reflect our intent.[4]

For its new approach, the majority relies on one precedent, *United States v. Porter*, 986 F.2d 1014 (6th Cir. 1993), a decision followed by no other state or federal court. The majority relies primarily on *Porter* for the contention that the accuracy of the statement can be shown according to objective indicia of reliability in lieu of the witness's own attestations. See *id.* at 1017. Although *Porter* contains some broad language, I cannot read it as supporting the majority's conclusion, and the facts are distinguishable from the present case. In *Porter*, the witness admitted making the statement and signing it under penalty of perjury. She testified that she tried to tell the truth to the police officer, but acknowledged that she was high on drugs at the time and could not be certain of what she had told the police. Therefore, she explicitly affirmed that the document reflected her knowledge when the statement was made. *Id.* at 1017.

*Porter* is, in the words of McCormick, an example of the "extreme, [where] it is even sufficient if the individual testifies to recognizing his or her signature on the statement and believes the statement correct because the witness would not have signed it if he or she had not believed it true at the time."[5] 2 McCormick on Evidence § 283, at 259. Here, the wife, unlike the witness in *Porter*, does not remember meeting the police officer and giving the statement to him. She

---

[4] One of the nuances is that the rule is drafted in the passive voice and should have been stated in the active voice if the draftspersons had intended that the witness testify to the accuracy of the content of the recording. Virtually all of the hearsay exceptions are stated in the passive voice, showing that the real motivation behind the drafting of any exception is parallelism with other exceptions.

I also note that the majority's textual approach explains only part of its rationale. It does not explain, for example, the majority's distinction between statements prepared by the witness and those prepared by third persons. There is no support for this distinction in the text of the rule.

[5] The prosecution might have brought this case within the rule by playing the tape for the wife, and eliciting similar responses about it. The prosecution did not do so.

consistently testified that because of her memory loss, she could not verify the accuracy and truthfulness of the statement. If *Porter* represents the "extreme" case, we have now gone well beyond the extreme and made that normal.

The majority's analysis would render the witness's presence on the witness stand superfluous. See *People v. Simmons*, 177 Cal. Rptr. 17, 21 (Ct. App. 1981). If third party testimony can establish objective facts indicating the reliability of the statement, then the witness's own attestations to the statement's accuracy become unnecessary. Extending the majority's logic, third party testimony could make admissible a statement that a witness claims is false, inaccurate, or was never made. The majority's holding transforms Rule 803(5) into an exception for prior inconsistent statements not made under oath, see V.R.E. 801(d)(1)(A), and into a "catch-all exception" for hearsay that does not fit within a statutory exception. Unlike the federal courts, we specifically decided that we would not adopt a "catch-all" hearsay exception. See Reporter's Notes, V.R.E. 803 (noting that Federal Rule of Evidence 803(24), providing for the catchall hearsay exception, was not adopted in Vermont). If we are to amend V.R.E. 803(5), we should do so by rule amendment and not by decision.

I can find no decision from any court that would allow admission in this case, and the evidence clearly does not meet the foundation requirement set forth in *State v. Lander*. Even if I thought *Porter* would go this far, the majority gives no explanation for overruling *Lander*. I would hold that the evidence did not meet the requirements of V.R.E. 803(5) and is, therefore, inadmissible hearsay. Since the evidence was central to the State's case, indeed was the entirety of the case, I would reverse the conviction on that basis.

## II

The concurring opinion has a different theory of admissibility. My main problem is that it is not supported by the facts found by the trial judge.

Through transcript pages of examination and cross-examination, the prosecutor and defense counsel attempted to induce defendant's wife to answer hypothetical statements that might support or oppose admissibility of the tape recording. The result is that she did both. At one point, as the concurring opinion cites, she answered "I don't believe I would have" to a question whether she would have made the statements on the tape if they were not true. At another point, she answered "anger" to a question asking whether there is a reason why she might tell someone something she did not believe was true.

Under V.R.E. 104(a), preliminary fact questions pertaining to admissibility are for the trial court. See Reporter's Notes to V.R.E. 104(a). In this case, the farthest the court went was to find "if she talked to a police officer, and that is now established, she would have endeavored to be truthful." The trial court adopted the theory of admissibility now accepted by the majority; it did not adopt the theory of the concurrence.

The rule requires that the recording be shown "to reflect . . . [the witness's] knowledge correctly." V.R.E. 803(5). I cannot accept that the recording has been shown to have reflected accurately the victim's knowledge when she does not remember making the recording and can state only "she would have endeavored to be truthful." Indeed, if this witness meets the foundation requirement, it is difficult to conceive of a witness who would not.

I can find no case that goes this far. In *United States v. Patterson*, 678 F.2d 774, 779 (9th Cir. 1982), the case relied upon by the concurrence, the witness recalled giving testimony to the grand jury and said "he did not think he had lied to the grand jury" and added that "he recalled the events in question better when he testified before the grand jury." This foundation testimony, which is specific to the prior statement, is far stronger than that here.

As I indicated above, the foundation here is much weaker than what McCormick describes as "the extreme." As McCormick indicates, the more common requirement is that the witness testify to a "habit or practice to record such matters accurately" even though he or she cannot speak to the accuracy of the particular recording at issue. See 2 McCormick, *supra*, § 283, at 259. Here, there is no showing of habit or practice.

I do not agree that we can affirm the trial court by relying on foundational facts not found below. If we accept the fact-finding of the trial court, as we must, the foundation requirements are not met.

### III

Even if the taped hearsay statement is admitted, I would still reverse the conviction because the hearsay was the sole basis for appellant's conviction, and cross-examination of the witness was futile. See *State v. Robar*, 157 Vt. 387, 391-96, 601 A.2d 1376, 1378-81 (1991). In *Robar*, we held that the State cannot meet its burden of proof if the sole evidence upon which the conviction is based is past recollection recorded, unless the prior statement meets specific standards of reliability. *Id.* at 395, 601 A.2d at 1380. A statement may

suffice to prove the elements of a crime if the statement were made under circumstances supporting its reliability, and if the defendant has the opportunity to cross-examine the declarant. *Id.* Mere perfunctory cross-examination, however, is not sufficient to ensure that a defendant receives a fair trial. *Id.* at 396, 601 A.2d at 1380-81.

We must remember that the *Robar* holding was based on cases that dealt with prior inconsistent statements where the opportunity for cross-examination is greater. See 2 McCormick on Evidence § 251, at 120 (evidence of prior inconsistent statement has the safeguards of examined testimony because "witness who has told one story aforetime and another [on the stand] has opened the gates to all the vistas of truth which . . . cross-examination . . . was invented to explore"). The leading precedent was *State v. Mancine*, 590 A.2d 1107, 1117 (N.J. 1991), which held that corroboration for each element of the crime was unnecessary as long as there is general corroboration and the reliability of the statement is supported by the circumstances under which it is given. The decision stressed:

> [T]he defendant must have the opportunity to cross-examine the declarant, because cross-examination . . . may be the only method of bringing forth facts necessary for a fair assessment of the circumstances under which the statement was given and in the trial setting is the sole means by which the factfinder can assess the credibility of the prior statement and the recanting one. . . . The crucible of cross-examination reveals "most, if not all, relevant circumstances surrounding the prior inconsistent statement," regardless of the witness' status.

*Id.* at 1117-18 (quoting *State v. Gross*, 577 A.2d 806, 812 (N.J. 1990)). Obviously, the function of cross-examination would not have been served in *Mancine* if the witness took the stand and testified that she did not remember the prior inconsistent statement or any of the circumstances under which it was given. Under those circumstances, the "crucible of cross-examination" would reveal absolutely *nothing.* Similarly, a full memory loss will make absolutely useless cross-examination on a record of past recollection.

In principle, the majority opinion appears to agree with the foregoing statement of our law and the fact that the hearsay statement was the sole basis for the conviction. In practice, it clearly doesn't agree with the cross-examination requirement. To demonstrate this point, we need only look to how the requirement was applied in *State v. Robar*, our main precedent in this area.

In *Robar*, the witness had given a full statement, under oath at an inquest, and the statement described defendant's involvement in the charged burglary. She could not remember the events at trial, nor her testimony at the inquest, but she did recall testifying at the inquest and stated that her testimony at the inquest was the truth. Cross-examination elicited that she was extremely drunk on the night of the burglary. We held that the cross-examination was "perfunctory" and deficient. 157 Vt. at 396, 601 A.2d at 1380-81.

Defendant here had less opportunity to cross-examine than the defendant in *Robar*. As in *Robar*, defendant showed that the witness might have been in an impaired state, here because of prescription drugs, but that is all that cross-examination showed. The fact that the witness had no recollection of the events or the statement was necessarily established in direct examination. The cross-examination of the police officer, even if relevant to whether defendant had a fair opportunity to cross-examine the alleged victim, could not go to the accuracy of the statement.

The majority deals with this deficiency by stating that the limited opportunity to cross-examine is present in every impaired memory case, and cannot be the basis for exclusion. I agree that the lack of memory of the events covered in the statement cannot alone prevent effective cross-examination. But here the witness professed to remember neither making the statement, nor the events covered in it. When the witness recalls making the statement, meaningful cross-examination is available about the circumstances under which the statement was made.[6] See D. Greenwald, *The Forgetful Witness*, 60 U. Chi. L. Rev. 167, 179 (1993) (witness who remembers making statement can still testify whether he was lying or uncertain when he made it, but "[l]ines of inquiry like this . . . are of course blocked when not only the content but the making of the statement are forgotten."). Thus, the cross-examination goes to the reliability of the statement, the heart of the question before the jury as discussed in *Mancine*. Without memory of giving the past statement, the witness is as close to a mannequin as we are ever likely to have.

---

[6]The majority is mistaken when they argue that our interpretation of the *Robar* requirements would mean that past recollection recorded could never be sufficient to uphold a conviction. The case before us presents the atypical past recollection recorded situation. Usually, the witness may not remember all or some of underlying events, but typically she remembers the circumstances under which she made the statement. See, e.g., *United States v. Porter*, 986 F.2d at 1017 (witness did not remember underlying events, but recalled circumstances under which she made and signed the statement given to police).

The examination and cross-examination here shows the uselessness of questioning a witness with no memory of any relevant event. Instead of eliciting evidence, the questions are actually arguments to demonstrate that absolutely anything could be true as far as the witness was concerned. See *Simmons*, 177 Cal. Rptr. at 21 (witness unable to recall making statement or circumstances surrounding its preparation "simply has no knowledge at all").

This exact distinction troubled the Court in *Robar.* We found the cross-examination deficient not because the witness had no memory of the events but because she had "no memory of the inquest and the events surrounding it." *Robar*, 157 Vt. at 396, 601 A.2d at 1380. There is no way we can find that the opportunity here meets the cross-examination requirement of *Robar.* None of this deficiency is answered by corroboration of the statement on which the majority relies. *Robar* is clear that indicia of reliability, supplied by corroboration, and an opportunity for cross-examination, are separate requirements. Moreover, the corroboration is as consistent with defendant's version of events as with the version contained in the statement. Corroboration adds nothing to the issue before the Court.

## IV

One other issue is symbolic of what is going on in this case. Although V.R.E. 803(5) admits past recollection recorded as an exception to the hearsay rule, the use of this evidence is carefully limited. Thus, the record "may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party." The limitation is to "avoid the danger that undue weight might be given to the [record] itself." Reporter's Notes to V.R.E. 803(5). The limitation was ignored in this case. The tape recording was played for the jury, rather than its content being read into evidence. See *State v. Discher*, 597 A.2d 1336, 1339 (Me. 1991) (once tape recording admitted as past recollection recorded, court permitted only transcript of tape recording to be read aloud to jury). It was replayed for the jury during their deliberations, at their request. The point was to give this recording the maximum weight possible because the taped hearsay statement was the primary evidence against defendant. The jury could have convicted defendant because the witness against him "sounded" credible.

The majority's answer to this point demonstrates what went wrong here. They find it "ludicrous to suggest that in this case the jury should hear another person read a transcript of the tape, rather than

hear the victim actually making the statement." It is, of course, equally "ludicrous" to have someone read a written statement, rather than giving it to the jury for its perusal. No doubt, the jury will be in a better position to judge reliability if it hears or sees the statement.

Following Federal Rule 803(5), we adopted this "ludicrous" restriction for a reason. Past recollection recorded is evidence of debatable quality, and we did not want excessive reliance placed on it. Unfortunately, this decision is going in the opposite direction. The recorded statement is virtually all of the prosecution's case, and the majority wants the full force of it to get before the jury. As our disagreements on the first two issues demonstrate, the majority has no concerns about the quality of this evidence, and a restriction built on such concerns looks ludicrous.

If this issue had been preserved, I would have voted to reverse also because we cannot say that the jury's verdict was not substantially swayed by the improper playing of the tape. See *United States v. Ray*, 768 F.2d 991, 995 (8th Cir. 1985) (conviction for failure to appear reversed where transcript constituting past recollection was submitted to jury and constituted only evidence of defendant's notice to appear). I raise it now to emphasize that evidence which, at best, is marginally reliable under evidence principles, and impossible to test through cross-examination, became the centerpiece of the prosecution's case and was put in front of the jury in the most damaging way possible. It adds to my firm conclusion that this trial did not meet minimum standards of fairness that allows us to affirm its result.

I dissent.