846 So.2d 677 (2003)
Margarito MONTANO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-825.
District Court of Appeal of Florida, Fourth District.
June 4, 2003.
*678 Carey Haughwout, Public Defender, and Richard B. Greene, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Laura Fisher Zibura, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
The main issue in this appeal is whether a crucial witness's tape-recorded statement given to the police shortly after a criminal incident was properly admitted in evidence under the recorded recollection exception to the hearsay rule, section 90.803(5), Florida Statutes (2001). We hold that the tape recording was improperly admitted in evidence because the witness who made the statement did not acknowledge its accuracy at trial.
However, we conclude that the error was harmless and affirm Margarito Montano's conviction of possession of a firearm by a convicted felon, contrary to sections 775.087 and 790.23, Florida Statutes (2000).
*679 The key witness in this case was Lourdes Cabrera. At the time of the incident, she lived in an apartment with appellant and their three-year-old daughter. Cabrera was also eight months pregnant with the couple's second child.
On March 24, 2001, a few minutes after midnight, Deputy David Smith responded to a 911 hang-up call. As he approached the Cabrera-Montano apartment, two girls, between the ages of ten and thirteen (later identified as Cabrera's sister, Bertha Rivera, and her sister's friend, Alexandra Pacheco), were crying and screaming: "[H]e's inside, he's got a gun, he's going to kill her" and pointed to apartment number "9."
Deputy Smith went to the front door of apartment nine as appellant was opening the door. Deputy Smith saw him trying to conceal a magazine clip in his hand. Deputy Smith seized the clip, and discovered it had bullets in it. A pat down of appellant revealed that he had some loose bullets on his person. After appellant disclosed its location, Deputy Smith recovered the gun from Cabrera's car. The magazine clip seized from appellant fit the gun.
Once he secured appellant in his police cruiser, Deputy Smith interviewed Cabrera inside her apartment. According to Deputy Smith, Cabrera said that she and appellant had gotten into an argument. He wanted to take the family to dinner, but she felt he was too intoxicated to drive. Appellant was yelling about getting his gun, so Cabrera hid it behind the television. Eventually, she told appellant about the gun's location. He retrieved it. After his recollection was refreshed, Deputy Smith testified that Cabrera told him that appellant had the gun in his possession when he went outside to the car.
Deputy Shawn Barber took a sworn, taped statement from Cabrera beginning at 12:48 a.m. On the tape, she explained the details of the night and stated that she told her sister and her sister's friend: "[I]f you see me like crying or screaming or something, just call the police." Cabrera said that she refused to go to dinner with appellant. An argument ensued. Because appellant was "screaming really hard," Cabrera's sister called the police. When appellant asked her for the gun, she told him she threw it in the garbage. Cabrera had actually taken all of the bullets out of the gun and hid it behind the television. After appellant threatened to hit her if she did not give him the gun, Cabrera retrieved the gun and gave it to him. The two got into the car to go to dinner. Once inside the car, appellant checked the gun and realized it was unloaded. He threw the gun on the floorboard. They went back inside the house. Appellant retrieved the magazine and loaded it.
At trial, Cabrera remembered absolutely nothing about the gun. Reviewing a transcript of her taped statement did not refresh her recollection. She testified that on the night of the incident, she argued with appellant because he was with another woman at their home, at a time when Cabrera was eight months pregnant and at the hospital with their sick daughter. She said that appellant and the other woman left when she arrived home; Montano returned a few hours later by himself. Cabrera stated that she was very angry and "just wanted to see [appellant] die that day."
Over objection, the state introduced the taped statement Cabrera had given to Deputy Barber on the night of the arrest. The trial judge ruled that the statement was admissible under section 90.803(5). The court stated:
The statement was given to a police officer, it was a sworn statement regarding the incident taken shortly after the incident. The statement given by *680 Lourdes Cabrera is consistent with other statements regarding the incident given by other witnesses, specifically Bertha Rivera, and the surrounding circumstances which shows corroboration of the matters to which Ms. Cabrera testified. The statement shows specific knowledge or knowledge of the specifics of the incident or of the events that night. She gave the statement in chronological order. The deputy testified that Ms. Cabrera was coherent at the time she gave the statement, not groggy or sleepy and that she was responding to questions appropriately, and I have read the statement and it shows that.
The jury found appellant guilty as charged of possession of a firearm by a convicted felon.
Often called past recollection recorded, the section 90.803(5) recorded recollection exception to the hearsay rule provides that the following is "not inadmissible as evidence, even though the declarant is available as a witness":
A memorandum or record concerning a matter about which a witness once had knowledge, but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. A party may read into evidence a memorandum or record when it is admitted, but no such memorandum or record is admissible as an exhibit unless offered by an adverse party.
§ 90.803(5). The exception is "generally recognized in federal and state courts." 6C Fla. Stat. Ann. 348 (1999). At the time section 90.803(5) was adopted in 1976, "[e]xisting Florida law [was] in agreement with this exception." Id. at 349.
Testimony about a recorded recollection "derives whatever force it possesses from the fact that the memorandum is the record of a past recollection, reduced to writing while there was an existing independent recollection." Volusia County Bank v. Bigelow, 45 Fla. 638, 33 So. 704, 706 (1903). The reliability of a recorded recollection "rests upon the veracity of a witness who is present and testifying." 2 McCORMICK ON EVIDENCE § 279, at 241 (John W. Strong ed., 5th ed.1999). As the supreme court has explained:
When a witness identifies as such a writing made contemporaneously (or nearly so) with events as to which testimony is elicited, and testifies that he knew at the time it was written that it was accurate, he incorporates into his testimony by reference the record of past recollection. On this basis, the writing becomes admissible since it is supported by the witness' oath, and he is available for cross examination.

Garrett v. Morris Kirschman & Co., 336 So.2d 566, 570 n. 6 (Fla.1976) (emphasis added).
The applicability of the recorded recollection exception in this case requires examination of three issues: (1) May a tape recording be recorded recollection? (2) Was the tape recording "made" by Lourdes Cabrera within the meaning of section 90.803(5)? (3) Did the state lay an adequate foundation for the admission of the tape recording even though Lourdes Cabrera did not assert that, at the time it was made, the tape accurately represented her knowledge of the incident?
Although the exception to the hearsay rule developed with respect to written documents, section 90.803(5) allows for tape recordings as recorded recollection. 2 McCORMICK ON EVIDENCE § 281, at 242-43. The statute refers to a "memorandum or record," language broad enough to include a tape recorded statement. Id. Most *681 courts that have ruled on the issue permit tape recordings to be recorded recollection. See United States v. Sollars, 979 F.2d 1294, 1298 (8th Cir.1992); Commonwealth v. Nolan, 427 Mass. 541, 694 N.E.2d 350, 352-53 (1998); Mitchell v. Archibald, 971 S.W.2d 25, 28 n. 4 (Tenn.App. 1998); State v. Marcy, 165 Vt. 89, 680 A.2d 76, 77-82 (1996).
Contrary to appellant's argument, Cabrera "made" the tape recording within the meaning of section 90.803(5). The hearsay exception is concerned with the accuracy of the statement as a rendition of earlier events, not with who manipulated the machine to create the recording.[1] Most of the cases admitting tape recordings as recorded recollection do so upon the testimony of the person who gave the statement that the recording "accurately reflected his knowledge at the time" the statement was made. Mitchell, 971 S.W.2d at 29; see also Nolan, 694 N.E.2d at 353.
It is the third question that is most difficult. Cabrera remembered giving a statement to the police, but did not remember its contents. Cabrera did not testify at trial that her taped statement accurately reflected her knowledge of the incident at the time it was made. She did not testify that she tried to be truthful at the time she spoke to Deputy Barber.
Section 90.803(5) requires the recorded recollection be "shown to have been made by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly." Florida Supreme Court cases predating the enactment of section 90.803(5) required the witness who made the record to testify "that he knew at the time it was written that it was accurate." Garrett, 336 So.2d at 570 n. 6. As the supreme court wrote in Smith v. Hinkley, 98 Fla. 132, 123 So. 564, 566 (1929):
Where a witness has no independent recollection of the facts, but states that he reduced them to writing at a time when he had a perfect recollection of them, he may refer to such writing. He may use a writing when it is used to assist his memory; his recollection of the fact being imperfect.

See Montgomery Ward & Co. v. Rosenquist, 112 So.2d 885, 887 (Fla. 2d DCA 1959) (quoting 4 JONES LAW OF EVIDENCE § 974 (5th ed.1958) for the requirement that for past recollection recorded the witness must "testify that, at or about the time when the writing was made, he knew of its contents and of its truth or accuracy").
The requirement that a witness vouch for the accuracy of his recorded recollection is consistent with the view that the hearsay exception is justified because a witness, who is available for cross-examination, "incorporates into [his] testimony by reference the record of past recollection." Garrett, 336 So.2d at 570 n. 6. Unlike exceptions to the rule against hearsay which derive their reliability from the circumstances that surround the making of an out-of-court statement, the reliability of a recorded recollection depends on the credibility of its maker. For this reason, *682 the law requires the maker to adopt the recorded recollection as his own.
We do not believe that section 90.803(5) changed Florida law requiring the witness to acknowledge the accuracy of the earlier record or statement. As McCormick has written about Federal Rule of Evidence 803(5):
No particular method of proving the accuracy of the memorandum is prescribed by Federal 803(5), which merely requires that it be "shown * * * to reflect that knowledge correctly." However, the witness must acknowledge at trial the accuracy of the statement.
2 McCORMICK ON EVIDENCE § 283, at 246. This foundational requirement for recorded recollection is in accord with that of Wigmore, which states that the "witness must be able now to assert that the record accurately represented his knowledge and recollection at the time" of making. 3 WIGMORE ON EVIDENCE §§ 746, 747, at 96, 97 (James H. Chadbourn rev., 1970); accord Lindley v. State, 728 So.2d 1153, 1155-56 (Ala.1998); Ringgold v. State, 34 Md.App. 286, 367 A.2d 35, 36-37 (1976).
The requirement that a witness be able to assert at trial that a recorded recollection correctly represented his knowledge at the time it was made is consistent with our recent case of Kimbrough v. State, 846 So.2d 540, 2003 WL 1027760 (Fla. 4th DCA Mar.12, 2003), reh'g denied, 846 So.2d 630, 2003 WL 21220747 (Fla. 4th DCA May 28, 2003). In that case, a co-defendant pled guilty prior to Kimbrough's trial. At trial, the state introduced the co-defendant's taped statement to the police. On the witness stand, the co-defendant did not remember providing a taped confession to a detective and refused to even acknowledge that his voice appeared on the tape.
We held in Kimbrough that the state had not laid a proper predicate for admitting the tape under section 90.803(5) because the co-defendant "could not testify either that the statement was his or that it was accurate." Kimbrough, 846 So.2d at 544. We read Middleton v. State, 426 So.2d 548 (Fla.1982), as requiring "testimony establishing either the witness's recollection of having made the statement, or, if the witness has no specific recollection, testimony from the witness that the statement accurately reflects what was said at the time." Kimbrough, 846 So.2d at 544.
Here, the trial court ruled that the state had established the accuracy of the prior taped statement by comparing it to an out-of-court statement of another witness, Bertha Rivera, by evaluating the level of detail and chronology of the statement itself, and by considering Deputy Barber's description of Cabrera's demeanor and state of mind. Urging us to affirm the trial court's approach, the state argues that we should follow the rule of cases such as State v. Marcy, where the Vermont Supreme Court wrote that the recorded recollection exception did not require the witness who made the statement to "affirm the accuracy of the prior statement." 680 A.2d at 79. For the reasons set forth above, we do not believe that Marcy reflects the law of Florida. We hold that the trial court erred in admitting the taped statement as recorded recollection.
Appellant challenges other evidentiary rulings on appeal. He asserts that the trial court erred by allowing the hearsay statements of Bertha Rivera, Alexandra Pacheco, and Cabrera made to Deputy Smith.
The state correctly contends that the statements to Deputy Smith were admissible as excited utterances. The excited utterance exception to hearsay is that "[a] *683 statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." § 90.803(2). Stoll v. State, 762 So.2d 870 (Fla.2000) set out the criteria for an excited utterance: "(1) there must have been an event startling enough to cause nervous excitement; (2) the statement must have been made before there was time to contrive or misrepresent; and (3) the statement must have been made while the person was under the stress of excitement caused by the startling event." Id. at 873; see Henyard v. State, 689 So.2d 239, 251 (Fla.1996); Willis v. State, 727 So.2d 952, 953 (Fla. 4th DCA 1998).
The issue of whether the declarant is "under the stress of excitement" at the time of the excited utterance is a preliminary fact question for the trial court to decide. See Stoll, 762 So.2d at 873; Cotton v. State, 763 So.2d 437, 440-41 (Fla. 4th DCA 2000). If "the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process." Stoll, 762 So.2d at 873 (quoting State v. Jano, 524 So.2d 660, 662 (Fla. 1988)); see State v. Skolar, 692 So.2d 309, 310 (Fla. 5th DCA 1997).
Applying the Stoll test, we find no error in the trial court's conclusion that two girls' statements were properly deemed to be excited utterances pursuant to section 90.803(2). The startling event was appellant's yelling and actions which placed the girls in fear that he would harm Cabrera. The girls began crying and screaming about the time the 911 call was made. Deputy Smith arrived soon after the call. The girls immediately began screaming and yelling to him: "[H]e's inside, he's got a gun, he's going to kill her," pointing to apartment nine.
Similarly, Cabrera's statements to Deputy Smith shortly after appellant was taken to the police car qualified as excited utterances. The startling event was appellant's yelling at Cabrera and threatening to hit her if she did not locate the gun. She was aware that when he was intoxicated, he would become violent. Her comments described the volatile situation moments after it occurred. Cabrera's demeanor, that she was crying and distraught, demonstrated that she was still under the stress of the excitement.
We find no merit in the other points raised by appellant.
Finally, we conclude that the admission of Cabrera's taped statement was harmless beyond a reasonable doubt. The girls' and Cabrera's excited utterances to Deputy Smith established appellant's possession of the gun. In crucial respects, Cabrera's statement to Deputy Smith paralleled the taped statement she gave to Deputy Barber a short while later. When Deputy Smith first confronted him, appellant had the magazine clip in his hand and bullets in his pocket. Appellant told Deputy Smith that the gun was located in Cabrera's car. Appellant had the opportunity to cross-examine Cabrera about her prior statements. The jury was able to evaluate her demeanor on the witness stand.
AFFIRMED.
KLEIN and TAYLOR, JJ., concur.
NOTES
[1] Apart from any hearsay issues, to introduce a tape recording in evidence, a proponent must satisfy the foundation requirements set forth in Gomien v. State, 172 So.2d 511 (Fla. 3d DCA 1965). See Parnell v. State, 218 So.2d 535, 541 (Fla. 3d DCA 1969) (summarizing the holding of Gomien as requiring the party offering a tape recording to ``show to the trial court's satisfaction that (1) the recording device was operating properly, (2) that it was operated in a proper manner, (3) the recording was accurate, and (4) the voices of the persons speaking were identified").