PER CURIAM.
Darius Polite petitions this Court to review the decision of the Fifth District Court of Appeal in Polite v. State, 41 So.3d 935 (Fla. 5th DCA 2010), which expressly and directly conflicts with decisions of the Second and Fourth District Courts of Appeal regarding the requirements for the admission of a record or memorandum of past recollection recorded under section 90.803(5), Florida Statutes (2008). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. The Fifth District determined that the admission of past recollection recorded evidence does not require a witness to testify that the record or memorandum accurately reflects the witness’ knowledge. The court held that the statement would be admissible if the State could show through evidence from any source that the statement was made when the matter was fresh in the mind of the declarant and that it was accurate. As explained below, we adhere to the previously established rule. Accordingly, we affirm that one of the requirements for admission of past recollection recorded hearsay under section 90.803(5) is that when such evidence is offered, the witness must vouch for the accuracy of the record or memorandum. We quash the decision before us and approve the decisions in Hernandez v. State, 31 So.3d 873 (Fla. 4th DCA 2010); Smith v. State, 880 So.2d 730 (Fla. 2d DCA 2004); and Montano v. State, 846 So.2d 677 (Fla. 4th DCA 2003).
I. FACTUAL AND PROCEDURAL HISTORY
In July 2008, a deputy was dispatched to the home of Falisa Levine on the report of a home invasion robbery. When he arrived
Ms. Levine and her [two] daughters were in the front yard, and all of them were hysterical, not believing what had just occurred. The deputy spoke to Ms. Levine, who told him what happened and identified [Darius] Polite by name as one of the [three] men who broke into her home. She then gave a sworn written statement, detailing the events and again identifying Polite by name as one of the robbers. Later, she identified Polite in a photographic line-up.
Polite, 41 So.3d at 936-37.
Before Levine testified at trial, the prosecutor informed the judge that she was afraid something would happen to her if she testified. She reluctantly took the stand. When asked to recount what happened the morning of the crime, she initially claimed she did not remember but then admitted that when law enforcement arrived she told them what happened. She claimed, however, that she did not identify any of the perpetrators to the officers. The prosecutor showed her the sworn statement she gave police shortly after the crime, and Levine identified the statement as hers. When asked if it was “true and correct,” however, she claimed *272 not to have read it. At that point, the court overruled the defendant’s “improper predicate” objection. Then Levine refused to read her statement and refused to testify to the events of July 14. The court sent the jury out and instructed Levine that she was under subpoena and could not refuse to answer questions.
When the jury returned, Levine testified that three men came to her house and kicked the door open. One man put a gun in her daughter’s face, and another picked up Levine’s purse. She spoke to the intruders but could not remember what she said. After she claimed lack of memory in response to further questions, the prosecutor again asked about her sworn statement. She again admitted that the statement was hers and said that she gave the statement about an hour after the crime. However, she claimed that the events were “not réally” fresh in her mind at the time because the “police and everybody was pressuring [her].” Before she could answer the prosecutor’s question of whether her statement was “true and correct,” defense counsel objected and immediately withdrew the objection.
After a bench conference, Levine resumed her testimony and stated that she did not give the three men permission to enter her house. The court then permitted the prosecutor to read the text of her sworn statement into the record:
I, Falisa Levine, was coming out of my bathroom when I heard a loud bang. I looked into my kitchen and noticed three black men entering the door by kicking it in. Two men I did not recognize, one I did only knowing him as Darius. Darius I know from the neighborhood. Darius then told me to get on the ground and also had handgun to head. When I screamed his name, Darius, he then said to other guys, we have the wrong house. One guy took my purse and Darius told him to put it back. The guys then ran out the door. Only two of the guys had handguns. Third guy did not. One of the guys did put handgun on kids. That is the guy that had his face covered up. The third guy came in after other two guys had already entered not doing anything but looking around. I then asked Darius why he is doing this and he said that he has the wrong house. He then walked outside leaving yard as I walked behind to see how they were traveling. I do know that this is Darius as soon as he entered my home. After that Darius then called my name. All the suspects left. I then tried to call police and phone line would not work. Second suspect did put purse on the shoulder and took my money totaling $250 out of my purse. That’s when Darius told him to put it back because this is like family.
First suspect 6'2, 200 pound black male; second suspect, 5'2, 130 pound, black male; third suspect, 5'2, 130 pound black male.
Sworn to and subscribed before me, this 14th day of July, 2008. Deputy Sheriff Brissette. I swear/affirm the above attached statements are correct and true, Falisa Levine.
Polite, 41 So.3d at 938. On cross-examination, defense counsel asked whether she could have made a mistake in her statement. Levine responded, ‘Tes. They was pressuring me. I don’t even know if I got the right person.”
Other evidence at trial established that the door of Levine’s home was damaged from being kicked in, leaving a shoeprint on the door, and her phone lines were cut. A videotape from a camera located across the street showed three men arrive at the house. After one went to the side of the house where the phone lines were located and returned, the three went inside. They *273 left several minutes later. In addition, the evidence showed that, as a requirement of probation, Polite was wearing a GPS device at the time of the crime, and his reported location was within 50 feet of the victim’s home at the time of the crime. Polite was shoeless when police found and arrested him later that day. Further, the videotape of the business where Polite claimed to be at the time of the crime contained no pictures of Polite. Finally, an officer testified that Levine later identified Polite as one of the offenders in a photo line-up. Darius Polite was convicted of burglary of a dwelling with an assault or battery, robbery with a firearm, aggravated assault with a firearm, and possession of a firearm by a convicted felon.
On appeal, Polite argued that because the proper foundation for admitting the content of Levine’s written statement as past recollection recorded under section 90.803(5) was not established, the statement was not admissible. 41 So.3d at 939. Specifically, he contended that a basic requirement for admission was not met because the witness did not testify that her statement was accurate or that she was being truthful at the time she wrote the statement. The Fifth District acknowledged that Hernandez, Smith, and Montano held that the witness must testify to the accuracy of the statement. Id. at 940. The district court, however, disagreed with these cases and held that Levine’s statement was admissible, reasoning as follows:
Polite correctly points out that Florida case law, as it stands currently, does not allow a written statement to qualify as a past recollection recorded unless the de-clarant lays the foundation for its admission with testimony at trial that he or she recorded the statement when the described events were fresh in his or her mind, and attests to the accuracy of the statement (either by testifying that he or she made an accurate record of the fact or event or that he or she is confident that the facts would not have been written unless they were true)....
We disagree with these cases because they are contrary to the plain language of the statute and rule. Section 90.803(5) simply requires as a foundation that the statement is “shown to have been made by the witness when the matter was fresh in the witness’ memory and to reflect that knowledge correctly.” The statute does not say that this “showing” must always (or only) be made by testimony from the declarant. A plain reading of the statute would allow admission of the statement so long as the state presented evidence (from any source) sufficient to support a finding that the statement was made when the matter was fresh in the witness’ mind, and that it was accurate. This is the approach taken by several cases applying the companion provision in the federal rules relating to past recollection recorded — Federal Rule of Evidence 803(5) — or identical state evidence rules.
Id. at 940 (citations omitted). The court then applied this reasoning to the facts of the case and concluded that
[g]iven the totality of the circumstances in this case, including that the witness swore to the statement as true at the time she gave it; that she was still consumed with the emotions of the event when talking with police; and that other evidence corroborated her statement, we find that there was sufficient evidence to lay a foundation for admission of the statement under section 90.803(5), even though the declarant herself never confirmed the accuracy of the statement at trial.
Id. at 941. After examining the other issues raised by Polite, the district court *274 affirmed the defendant’s convictions and sentences. Id. at 943.
II. ANALYSIS
The Fifth District’s holding that the testifying witness is not required to vouch for the accuracy of the out-of-court statement for the content of the memorandum or record to be admissible conflicts with the decisions from two other district courts. The Fourth District and the Second District, in accordance with existing precedent, require the witness to vouch for the accuracy of the record.[1] We begin our analysis of the hearsay exception contained in section 90.803(5) with a discussion of the rule and the previously established requirements for admission of statements of past recollection recorded.
A. The Rules Governing Admission of Past Recollection Recorded
Under federal and state law, hearsay evidence is generally inadmissible in court unless the hearsay statement falls within an established exception. See Fed.R.Evid. 802; § 90.802, Fla. Stat. (2008). The exception at issue in this case — past recollection recorded — is substantively the same under both federal and Florida law, although the language is not identical. Federal Rule of Evidence 803(5)[2] provides as follows:
(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness’ memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.
In turn, under the Florida Evidence Code this hearsay exception in section 90.803(5) provides:
(5) Recorded recollection. — A memorandum or record concerning a matter about which a witness once had knowledge, but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made by the witness when the matter was fresh in the witness’s memory and to reflect that knowledge correctly. A party may read into evidence a memorandum or record when it is admitted, but no such memorandum or record is admissible as an exhibit unless offered by an adverse party.
Clearly, the rule requires that this hearsay evidence is admissible where the record or memorandum is “shown to have been made by the witness when the matter was fresh in the witness’s memory and to reflect that knowledge correctly.” § 90.803(5), Fla. Stat. (2008). The rule does not impose the requirements on how this showing must be made. In fact, a note to the federal rule comments as follows:
No attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate.
*275 Fed.R.Evid. 803, 28 U.S.C.A. (West 2001) (Advisory Committee Notes, 1972 Proposed Rules, Note to Paragraph (5)). The plain language of both rules permits the admission of the contents of a record made by the witness where: (1) the witness had firsthand knowledge of the matter contained in the record or memorandum; (2) the memorandum was made near the time of the event when it was fresh in the witness’s memory; (3) the witness currently lacks sufficient memory to testify on the matter; and (4) the contents of the memorandum accurately reflect the witness’s knowledge. See Kenneth S. Broun, 2 McCormick on Evidence § 279, at 294 (6th ed. 2006).
Although the rules do not specify that the witness who once had knowledge of the matter and made the record must testify to the accuracy of the hearsay statement, both rules have been construed similarly to require it. See McCormick § 283, at 299 (“No particular method of proving the accuracy of the memorandum is prescribed by Federal 803(5).... However, the witness must acknowledge at trial the accuracy of the statement.”); Charles W. Ehrhardt, Florida Evidence, § 803.5, at 891 (2011) (“The foundation may be laid by testimony that the witness remembers making an accurate recording of the fact or event or by testimony that the witness is confident that the facts would not have been written unless they were true.”). This Court confirmed these requirements for admissibility in Garrett v. Morris Kirschman & Co., 336 So.2d 566, 570 n. 6 (Fla.1976), as follows:
When a witness identifies as such a writing made contemporaneously (or nearly so) with events as to which testimony is elicited, and testifies that he knew at the time it was written that it was accurate, he incorporates into his testimony by reference the record of past recollection. On this basis, the writing becomes admissible since it is supported by the witness’ oath, and he is available for cross examination.
Thus, in Florida, the witness’s testimony as to the correctness of the statement is essential to the admission of the evidence. In the next section, we examine the conflict cases which followed this precedent.
B. The Conflict Cases
As stated above, the established procedure for admitting a hearsay statement under 90.803(5) requires that the witness attest to the correctness of the memorandum or record admitted as past recollection recorded. A totality of the circumstances test like that adopted by the Fifth District has not previously been applied to the accuracy determination in lieu of the witness testifying to the accuracy. Below, we review the conflict cases which correctly follow the established rule for admission of statements of past recollection.
Two of the decisions — Montano and Hernandez — were issued by the Fourth District. Montano involved a criminal trial in which the defendant was charged with possession of a firearm by a convicted criminal. The defendant’s girlfriend testified regarding the incident at their home that precipitated the charge. However, she disavowed any memory of a gun. 846 So.2d at 679. Over objection, the trial court admitted the witness’s statement under section 90.803(5) after finding the contents of the statement “consistent” with the testimony of other witnesses and “the surrounding circumstances.” 846 So.2d at 680. Thus, the trial court considered the other evidence presented at trial to determine whether there was sufficient evidence of the statement’s accuracy. This is the same totality of the circumstances test that the Fifth District applied in Polite. On appeal, the Fourth District held that ad *276 mission of the statement was error, albeit harmless. Id. at 682-88.
The witness in Montano remembered giving the statement but did not remember its content. 846 So.2d at 681. She did not testify, however, that her statement was accurate or that she would have been truthful in making the statement. Id. The Fourth District examined a number of authorities on evidence regarding the purposes of this hearsay exception and the requirements for admission of such evidence. Citing our decision in Garrett, the district court explained that
[t]he requirement that a witness vouch for the accuracy of his recorded recollection is consistent with the view that the hearsay exception is justified because a witness, who is available for cross-examination, “incorporates into [his] testimony by reference the record of past recollection.” Garrett, 336 So.2d at 570 n .6. Unlike exceptions to the rule against hearsay which derive their reliability from the circumstances that surround the making of an out-of-court statement, the reliability of a recorded recollection depends on the credibility of its maker. For this reason, the law requires the maker to adopt the recorded recollection as his own.
Montano, 846 So.2d at 681-82 (emphasis added). The court emphasized that in Florida, the witness’s testimony to the accuracy of the statement is a “foundational requirement.” Id. at 682.
Later, in Hernandez, the Fourth District considered a similar scenario. The police recorded a conversation between the victim and her aunt, the defendant’s wife. 31 So.3d at 876. During the conversation, the victim’s aunt admitted that the defendant had confessed to her that he sexually abused the victim. Id. Before the aunt testified, the tape of the conversation was played for her and a transcript was provided. Id. Although she recognized her own voice, she said she could not hear what was being said. Id. Then, on the stand, she denied the defendant had confessed to her and testified that “neither the tape nor the transcript refreshed her memory.” Id. The district court cited the proper test for admission as follows:
If the proper foundation is laid, a tape-recorded statement may qualify as a recorded recollection. To be admitted into evidence, the past recollection recorded must be offered by the witness who is either devoid of a present recollection, or possessed of an imperfect present recollection and desires to use a memorandum of a past recollection. “The witness must be able to assert now that the record correctly represented his knowledge and recollection at the time of making.”
31 So.3d at 878 (citations omitted). The district court found that the witness was “unable, or unwilling, to attest to the accuracy of the taped conversation,” and that her live testimony contradicted the contents of the tape recording. Id. Accordingly, the court applied existing Florida law regarding the requirements for admission of records of past recollection and held the evidence was inadmissible. Id. at 878-79.
Finally, in Smith, the Second District overturned a manslaughter conviction, holding that the admission of several witness statements under section 90.803(5) was erroneous and that the error was not harmless. 880 So.2d at 732. Each of three witnesses had given sworn statements to the police after the incident, and at trial each recanted. Id. at 734. When asked about their statements, they testified “that they either did not remember giving a statement or that they had not given a statement at all.” Id. at 736. In addition, they testified that they did re *277 member the events of the evening of the crime, and their testimonies contradicted the contents of the statements made to law enforcement. Citing Ehrhardt’s Florida Evidence and the Fourth District’s opinion in Montano, the district court held that “the State failed to establish two critical threshold requirements of the recorded recollection exception.” Id. at 786.
First, the recanting witnesses did not testify that they had given the tape-recorded statements and that they accurately reflected their memory of events at the time they were made. Each of the recanting witnesses testified that they either did not remember giving a statement or that they had not given a statement at all. In order for a memorandum or record to qualify as recorded recollection, the witness must testify that he made an accurate record of the fact or event or that he is confident that the facts would not have been written unless they were true.
Id. (emphasis added).
Second, the State failed to establish another critical threshold requirement of the recorded recollection exception because the State failed to show that the witnesses had an insufficient recollection of the events on the night of the shooting to enable them to testify fully and accurately. The recorded recollection exception requires that the witness have a present loss of memory concerning a matter about which the witness once had knowledge but now cannot adequately remember. Before the adoption of the evidence code, Florida decisions approving “past recollection recorded” evidence emphasized that the witness “had no present recollection” independent of the record. Presently, under section 90.808(5), a sufficient foundation may be shown if the witness merely “now has insufficient recollection to enable the witness to testify fully and accurately.”
880 So.2d at 738 (citations omitted) (emphasis added).
There are admittedly few cases in Florida addressing the requirements for admitting past recollection recorded. These three cases from the Second and Fourth Districts, however, correctly enunciate and apply the established test for admission of such statements under section 90.803(5).
C. Resolving the Conflict
Above, we explained the requirements for admission of statements under section 90.803(5). We now turn to the Fifth District’s decision in Polite and begin by examining two of the cases on which the district court relied in concluding that it was not necessary for the witness to attest to the accuracy or correctness of the record of past recollection.
In United States v. Porter, 986 F.2d 1014 (6th Cir.1993), the teenage girlfriend of the defendant had given a statement to the FBI relevant to the charges against him. At trial, she recalled the statement but not its contents. Id. at 1016. As to the statement’s accuracy, she testified that “she tried to tell the truth in the statement, [but] she was not sure she had done so” because she was using drugs at that time. Id. at 1017. The trial court admitted her statement as past recollection recorded upon consideration of a number of factors, including that it was consistent and detailed, and it was signed under penalty of perjury and made when the witness feared reprisal from the defendant. Id. On appeal, the Sixth Circuit upheld the admission of the contents of the statement into evidence, commenting that
Rule 803(5) does not specify any particular method of establishing the knowledge of the declarant nor the accuracy of the statement. It is not a sine qua non of admissibility that the witness ac *278 tually vouch for the accuracy of the written memorandum. Admissibility is, instead, to be determined on a case-by-case basis upon a consideration, as was done by the district court in this case, of factors indicating trustworthiness, or the lack thereof.
While Rule 803(5) treats recorded recollection as an exception to the hearsay rule, the hearsay is not of a particularly unreliable genre. This is because the out-of-court declarant is actually on the witness stand and subject to evaluation by the finder of fact.
Id. at 1017.
Applying Porter’s reasoning, the Vermont Supreme Court in State v. Marcy, 165 Vt. 89, 680 A.2d 76, 79-80 (1996), admitted a witness’s statement using this same approach to determine accuracy. The witness testified that she did not remember her husband’s assault on her but did remember obtaining a restraining order and being interviewed by police. Id. at 78-9. She did not, however, testify to the accuracy of her tape-recorded statement. The Vermont Supreme Court opined that “the language of the rule contemplates a more flexible case-by-case determination of the admissibility of a statement as past recollection recorded, that evaluates the trustworthiness of the prior statement instead of focusing on hyper-technical evidentiary requirements.” Id. at 80. Accordingly, the court found the trial court correctly admitted the taped interview based on a number of factors, including the close proximity in time of the witness’s statement to the event, the coherence of her statement, and the consistency between her statement and other testimony. Id. at 79.
Although in Montano the Fourth District expressly rejected Many’s reasoning because it did not “reflect[] the law of Florida,” 846 So.2d at 682, the Fifth District subsequently embraced both Many and Porter. Thus, in Polite the district court declared that the requirement that the witness attest to accuracy is “contrary to the plain language of the statute and rule” and concluded that a statement of past recollection is admissible “so long as the state presented evidence (from any source) sufficient to support a finding that the statement was made when the matter was fresh in the witness’ mind, and that it was accurate.” 41 So.3d at 940. Noticeably absent from the cases on which the Fifth District relies, however, is any discussion or acknowledgment of the purpose of having the witness attest to the accuracy of the record of the witness’s past recollection. Moreover, the historical and legal analysis supporting the requirement that is provided in Montano, 846 So.2d at 680-82, goes unaddressed in Polite as well.
We reject the Fifth District’s embrace of a totality of the circumstances test and affirm that in Florida the admission of past recollection recorded under section 90.803(5) requires the witness to indicate that the statement was made at a time when the events were fresh in his or her mind and also attest to the accuracy of the memorandum or record. We have previously explained that recording the statement while the matter is fresh in the witness’s mind is important because the statement is the record of the event or matter. Contrasting this hearsay exception from refreshing memory, we stated:
There is a clear and obvious distinction between the use of a memorandum for the purpose of stimulating the memory and its use as a basis for testimony regarding transactions as to which there is no independent recollection. In the former case it is immaterial what constitutes the spur to memory, as the testimony, when given, rests solely upon the independent recollection of the witness. *279 In the latter case the memorandum furnishes no mental stimulus, and the testimony of a witness by reference thereto derives whatever force it possesses from the fact that the memorandum is the record of a past recollection, reduced to writing while there was an existing independent recollection. It is for that reason that a memorandum, to be available in such cases, must have been made at or about the time of the happening of the transaction, so that it may safely be assumed that the recollection was then sufficiently fresh to correctly express it.
Middleton v. State, 426 So.2d 548, 551 (Fla.1982) (quoting Volusia Cnty. Bank v. Bigelow, 45 Fla. 638, 83 So. 704, 706 (1903)). Thus, when statements of past recollection recorded are admitted under this hearsay exception, “the facts are being offered from the record or memorandum,” not from the witness’s testimony. See Ehrhardt, § 803.5 at 891. That is, the contents of the record substitute for the witness’s testimony. Id. at 894.[3] This means that “the reliability of the assertions rests upon the veracity of a witness who is present and testifying.” McCormick, § 279, at 294; see 3 Wigmore on Evidence § 747, at 97 (Chadbourn rev. ed. 1970) (“The witness must be able now to assert that the record accurately represented his knowledge and recollection at the time.”). Accordingly, a witness must testify that the recorded statement accurately reflects the witness’s knowledge. If the witness is unable to adequately recall making the record, the witness may nevertheless verify the record or memorandum by testimony that: (1) although the witness does not recall the statement, the witness has a habit of recording such matters correctly or (2) the witness believes the statement is correct because the witness would have been truthful in providing the statement. See McCormick, § 283, at 298-99; Wigmore, § 747, at 98-9. Thus, we reiterate our previous statement' from Garrett that a writing is admissible when identified by a witness to have been made contemporaneously with the events in question and about which a witness testifies was accurate at the time written. 336 So.2d at 570 n. 6.
D. Conclusion
In this case, a proper foundation for admission of the witness’s statement of past recollection recorded was not established. As we have explained above, the hearsay statement was inadmissible because the witness did not vouch for its accuracy or correctness. Accordingly, we quash the Fifth District’s decision in this case and remand for further proceedings in accordance with this opinion.
It is so ordered.
PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, C.J., concurs.

. We disagree with the Fifth District’s holding that Polite did not preserve for appeal the claim that the foundation for admission of the statement under section 90.803(5) was not laid. See Polite, 41 So.3d at 939.

. The rule was amended in 2011 for stylistic purposes only. See Fed.R.Evid. 803 cmt. 2011 Amendments.

. In fact, it is because the contents of the record or memorandum are the equivalent of testimony, once admitted, the actual exhibit cannot be admitted as evidence unless the opposing party offers it. See Ehrhardt, § 803.5 at 894.