*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0139**

State of Minnesota,
Respondent,

vs.

Mainza Lombe Malambo,
Appellant.

**Filed December 18, 2023**
**Affirmed in part, reversed in part and remanded**
**Connolly, Judge**

Hennepin County District Court
File No. 27-CR-21-23225

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam E. Petras, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Klaphake,

Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**CONNOLLY**, Judge

Appellant challenges his conviction of third-degree criminal sexual conduct, arguing that he is entitled to a new trial because the district court committed reversible error by admitting a witness's out-of-court police statement as a recorded recollection. He also challenges his sentence on both counts on the ground that the two offenses arose from a single behavioral incident. He also challenges the imposition of a lifetime conditional release on count two and the language in his warrant of commitment. We affirm in part, reverse in part, and remand.

## FACTS

G.A. was in an intimate relationship with appellant Mainza Malambo from about 2018 until 2020, when their relationship ended. Both worked in the hospitality industry, and they remained on friendly terms. One evening in September 2021, G.A., while working as a drink server, consumed enough alcohol that she was intoxicated by 2:30 a.m., when she finished working. She had planned to attend an after-work party with her boyfriend, A.A., but when he arrived and saw how drunk she already was, he went home, and G.A. drove herself to the party.

At the party, G.A. telephoned her friend M.H., who said she was in the hospital and therefore not coming. M.C., a member of the security staff at the party venue, saw G.A.'s condition and took her keys away from her. About 6 a.m., appellant, who was also a guest at the party, asked G.A. for a ride home. G.A. drove appellant to his apartment. He asked

2

her to come in and sober up and said he would call an Uber for her. G.A. went into appellant's apartment and fell asleep on his bed.

She woke around 7 a.m. to find appellant on top of her and penetrating her vagina with his penis. She tried unsuccessfully to push him off, then again fell asleep. Around 11 a.m. she woke again to find appellant on top of her, penetrating her. She told him she did not want this and tried to push him off, but he did not comply, telling her he was stronger than she was. Later, G.A. drove appellant downtown and then went home.

In October, G.A. reported the two assaults to the police. Appellant was charged with count one, third-degree criminal sexual conduct/complainant physically helpless or mentally incapacitated, and count two, third-degree criminal sexual conduct/coercion.

About a month after the incident, the police interviewed M.C. He gave a three-minute taped statement about G.A.'s condition that night:

> Yes so we're doing the afterparty. I'm the security so I was outside and then I came upstairs. I seen her like falling over and I seen she had her keys, so I took her keys from her. But I had to go back outside. Then I came back up again I seen her stumbling. So, I made her sit down. And then at like 5 in the morning she was like all right I have a ride home. I need my keys to get into my house. So I'm not driving. So, I gave her, her keys. And then she walked out.

At appellant's trial, M.C. did not want to testify and said he did not remember either the night when he took G.A.'s keys or giving a statement to the police. But, when he heard the recording of the statement, he acknowledged that the voice on it was his, and said he did remember giving the statement. Over M.C.'s objection, the tape was played for the

3

jury. When asked at trial if he had said G.A. was falling down because of the amount of alcohol she had consumed that night, M.C. testified, "Yes, she was drunk. Yes."

The jury found that appellant was guilty of both charges and that he did not use force. Because the district court concluded that the crimes were not part of a single behavioral incident, appellant was sentenced to 48 months in prison and ten years of conditional release on count one and to 76 months in prison and lifetime conditional release on count two. Both sentences were to run concurrently.

Appellant challenges his conviction and his sentence, arguing that (1) the district court abused its discretion by admitting M.C.'s recorded statement under Minn. R. Evid. 803(5), the recorded past-recollection exception to the rule against hearsay; and (2) the district court erred in sentencing him on both counts because his offenses were committed as part of a single behavioral incident. He also challenges the imposition of a lifetime conditional release on count two and the language on the warrant of commitment concerning the use of force.

**DECISION**

**1.    Admission of Evidence**

"Evidentiary rulings rest within the sound discretion of the district court, and we will not reverse an evidentiary ruling absent a clear abuse of discretion. *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). "[A]n appellant who alleges an error in the admission of evidence that does not implicate a constitutional right must prove that there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Peltier*, 874 N.W.2d 792, 802 (Minn. 2016) (quotation omitted).

4

The district court admitted the tape of M.C.'s statement under Minn. R. Evid. 803(5), providing, as an exception to the rule against hearsay:

> [a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly.

Appellant argues that, while the tape was a record concerning something M.C. once had knowledge about but could no longer remember fully and it had been made by M.C. when the event was fresh in his memory, it did not reflect his knowledge of the event correctly because "[M.C.] did not vouch for the accuracy of the statement either when he made it or at trial" and therefore "the statement was not admissible as a recorded recollection."

No precedential Minnesota case states that a witness must testify to the accuracy of the statement for it to be admissible under Minn. R. Evid 803(5). Appellant relies on *Polite v. State*, 116 So.3d 270, 279 (Fla. 2013) (a 5-2 decision holding that a "hearsay statement was inadmissible because the witness did not vouch for its accuracy or correctness"), but appellant does not explain why Florida caselaw would apply here. Moreover, nonprecedential Minnesota decisions hold that testimony on the accuracy of a statement made under Minn. R. Evid. 803(5) is not required. *See*, *e.g.*, *State v. Robinson*, A17-0525, 2018 WL 414327, *4 (Minn. App. Jan. 16, 2018) (refuting argument that admitting a recorded statement absent testimony as to the accuracy of the statement was plain error where (1) the declarant was a reluctant witness trying to recant to benefit the appellant and (2) other evidence presented at trial supported the accuracy of the statement), *aff'd*, 921 N.W.2d 755 (Minn. Jan. 9, 2019); *State v. Barta*, A12-1851, 2013 WL 4404579, *2-3

5

(Minn. App. Aug. 19, 2013) (holding that statement was admissible although declarant had been intoxicated at the time of making the statement and could not remember it and noting that "rule 803(5) is silent as to how the fourth requirement [that the statement reflects the declarant's knowledge correctly] is established"), *rev. denied* (Minn. Oct. 23, 2013). We therefore conclude that the district court did not abuse its discretion by admitting the out-of-court statement as a recorded recollection. But, even if there was an error, appellant cannot show that it affected the outcome of the case.

Appellant's attorney, when opposing the admission of the statement, stated that "[M.C.'s] brief testimony . . . about not remembering is clearly not credible." Two other witnesses, G.A.'s boyfriend A.A. and her friend M.H., provided testimony about G.A.'s intoxication that corroborated M.C.'s recorded statement. Thus, there was little probability that the verdict would have been different without M.C.'s statement.

Admitting that statement into evidence under Minn. R. Evid. 803(5) was not an abuse of discretion, and, even if it were, appellant has not met his burden of showing a reasonable possibility that the statement affected the verdict. *See Peltier*, 874 N.W.2d at 802.

**2.      Sentencing**

The district court said at sentencing:

> [T]he jury found two separate acts. It's not simply two separate theories to convict based on one act. It was two counts based on two separate incidents that included, again, two different theories, two different ways to commit the act.
> There is no particular requirement for how much time needs to pass between the incidents for it to not be considered a single behavioral incident. But I do believe in this case that . . .

6

> enough time . . . occurred for this to be sentenced as two separate incidents and not a single behavioral incident.
> . . . [T]he complaint was amended . . . to include separate counts under two different acts and not just another theory for the same act.

Appellant was sentenced on both counts.

He relies on Minn. Stat. § 609.035, subd. 1 (2020) (providing that, if a person's conduct constitutes more than one offense, but the multiple offenses are part of a single behavioral incident, the person may be punished for only one offense) to argue that the district court erred in concluding that appellant's two sexual assaults of G.A. were not a single behavioral incident. Whether offenses were part of a single behavioral incident is a mixed question of law and fact, and an appellate court reviews the findings of fact for clear error and the application of the law to those facts de novo. *State v. Bakken*, 883 N.W.2d 264, 270 (Minn. 2016).

To determine whether offenses were part of a single behavioral incident, a court considers whether the defendant was motivated by a desire to obtain a single criminal objective, *State v. Johnson*, 653 N.W.2d 646, 651 (Minn. App. 2002), but the fact that both offenses served the purpose of sexual gratification does not unify two separate acts of criminal sexual conduct into a single behavioral incident. *State v. Barthman*, 938 N.W.2d 257, 267 (Minn. 2020). Courts also consider whether offenses arose from one uninterrupted course of conduct, occurred at substantially the same time, and showed an indivisible state of mind, *Johnson*, 653 N.W.2d at 651-52, and whether the offenses were necessary or incidental to committing a single crime. *Barthman*, 938 N.W.2d at 267. Here, the two offenses were four hours apart; the first was committed with a victim so intoxicated

7

that she could not consent, while the second was committed by coercing a nonconsenting victim, and neither offense was connected in any way to the other.

Appellant relies on *State v. Herberg*, 324 N.W.2d 346, 348 (Minn. 1982) (concluding that a defendant who assaulted and committed first-degree criminal sexual conduct with a victim, then, fearing he would be observed, drove the victim a short distance and again assaulted and committed first-degree criminal sexual conduct with her, was engaged in a single behavioral incident because "there was an underlying unity to the various acts of assault, penetration, and degradation"). *Herberg* distinguishes *State v. Stevenson*, 286 N.W.2d 719, 720 (Minn. 1979), in which the supreme court concluded that two rapes of the same victim, in the same place, were not a single behavioral incident because they were separated by nearly five hours and "neither act bore any essential relationship to the other. The two rapes in this case resemble those in *Stevenson* rather than those in *Herberg*.

Appellant also argues, and respondent the State of Minnesota agrees, that the imposition of the lifetime conditional release in the sentence on count two should be reversed because the guilty verdicts were simultaneously accepted and recorded. Respondent also agrees with appellant that the matter should be remanded to strike a clerical error on the warrant of commitment stating that appellant used force, given the jury's response to a special interrogatory finding that appellant did not use force. Therefore, we reverse the imposition of the lifetime conditional release and remand for correction of the warrant of commitment.

**Affirmed in part, reversed in part, and remanded.**